**In re Ben CARTER, Petitioner.**

No. 80–7010
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

May 30, 1980.

* Fed.R.App.P. 34(a); 5th Cir. R. 18.

Harris, McCracken, Pickett & Jackson, William R. McCracken, Augusta, Ga., for petitioner.

Anthony A. Alaimo, U.S. Dist. Judge, Brunswick, Ga., Donald W. Fisher, Toledo, Ohio, Jacobs, Jacobs & Davis, James T. Langford, Atlanta, Ga., Jack L. Cooper, Augusta, Ga., for district court.

Before AINSWORTH, FAY and RANDALL, Circuit Judges.

FAY and RANDALL, Circuit Judges:

In ruling on this petition for a writ of mandamus we must first answer the threshold question whether the bar to appellate review of a district court order remanding a case to a state court, which is found in 28 U.S.C. § 1447(d),[1] applies to a remand order entered upon a ground specified in 28 U.S.C. § 1447(c)[2] but issued after entry of final judgment in the federal court. Finding that § 1447(d) is no bar to appellate review in this case, we also review the propriety of the remand order entered by the district court and, disagreeing with the district court's disposition of the case, we grant the writ.

## I. Procedural History

Ben Carter, a resident of Georgia, originally filed this action in 1972, in a Georgia state court against the Sheet Metal Workers' International Association [the International] and Local 85 of that labor organization. The complaint charges the represent-

1. 28 U.S.C. § 1447(d) (1976) provides:

 An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was removed pursuant to section 1443 of this title shall be reviewable by appeal or otherwise.

2. 28 U.S.C. § 1447(c) (1976) provides:

 If at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court shall remand the case, and may order the payment of just costs. A certified copy of the order of remand shall be mailed by its clerk to the clerk of the State court. The State court may thereupon proceed with such case.

atives and members of the two organizations with a conspiracy to deprive Carter of his employment, to deny him his union membership, and to impair his reputation. The Local answered the complaint while the International did not, filing instead a motion to quash service and to dismiss the complaint because of improper service. That motion was denied and, because no answer to the complaint had been filed, a default judgment was entered against the International. Before trial, Carter dismissed the Local as a defendant, and therefore the state trial concerned only the issues of the amount of damages and attorney fees for which the International was liable to Carter. The jury found the following damages and fees: $22,089 actual damages; $30,000 punitive damages; and $9,300 attorney fees.

This judgment was ultimately reversed by the Georgia Supreme Court on the ground that the International was not validly served with process. *Sheet Metal Workers' Inter. Ass'n v. Carter*, 241 Ga. 220, 244 S.E.2d 860 (1978). The action was reinstituted and proper service on the International made, whereupon the International removed the case to the federal court. The basis for removal as described in the International's Petition for Removal was that the general allegations of the complaint, particularly the assertions that "the defendants conspired together, maliciously and willfully, to deprive the plaintiff of his employment in the Sheet Metal Industry . . [and] to deny plaintiff his right and privilege to be a member of defendants' union" appeared to allege claims arising under federal law. The International specifically mentioned three provisions of the Labor Management Reporting and Disclosure Act of 1959, 29 U.S.C. §§ 401, 402, 411 (1976), and one provision of the Labor Management Relations Act, 29 U.S.C. § 185 (1976). Alternatively, the International argued that removal was proper because the case came within the original jurisdiction of the district court pursuant to 28 U.S.C. § 1337 (1976).

The general allegations of the complaint asserted that the International and the Local had engaged in conduct that arguably might have formed the foundation of a federal cause of action. Understandably, however, Carter's Georgia pleading cited no federal statute and does not unambiguously raise a claim under federal law. Carter did not move to have the case remanded, and the court did not remand on its own motion. At a pretrial conference, Carter made it clear that he intended to press only a state-created tort claim. The federal court did not then remand the action. After trial, the jury returned a verdict in favor of Carter in the following amounts: $35,000 actual damages; $110,000 punitive damages; and $5,280 attorney fees. In accordance with the jury verdict, the district court entered a final judgment in the case on May 25, 1979.

After entry of final judgment the International, which had initially sought removal, moved to have the judgment vacated and the case remanded for lack of subject matter jurisdiction. Upon examining the question of jurisdiction, the district court regretfully concluded that it had not had jurisdiction to hear the case, vacated the judgment, and remanded the case to the Superior Court of Richmond County, Georgia. Carter then filed this petition for a Writ of Mandamus with this court seeking review of the remand order. Well aware of the prohibition of appellate review of remand orders contained in 28 U.S.C. § 1447(d), and cognizant also of the limiting construction of that prohibition found in *Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976), we requested additional briefs from the parties addressing the jurisdictional issues underlying the district court's action. Having considered the issues carefully, we now hold that the remand order, although entered upon a ground specified in § 1447(c), is reviewable notwithstanding § 1447(d) because it was entered outside of the time frame specified in § 1447(c); and upon review of that remand order we determine that remand was improper. We therefore grant the application for a writ of mandamus.

## II. Reviewability of the Remand Order

In holding that all remand orders entered by federal district courts are not insulated from review by § 1447(d), the Supreme Court in *Thermtron* emphasized that § 1447(d) must be construed with reference to § 1447(c). 423 U.S. at 345. The court said: "[O]nly remand orders issued under § 1447(c) and invoking the grounds specified therein—that removal was improvident and without jurisdiction—are immune from review under § 1447(d)." *Id.* at 346, 96 S.Ct. at 590. The remand order in this case was explicitly based on a § 1447(c) ground—lack of jurisdiction over the subject matter of the litigation. Section 1447(c) does not by its terms apply to all remand orders entered upon such a ground, however, but only to those entered "at any time before final judgment." Vacation of the final judgment of a federal court that was without jurisdiction to hear the case, and a subsequent remand order, are not provided for in § 1447(c). Nevertheless, because federal courts are courts of limited jurisdiction, due regard for the constitutional allocation of powers between the state and federal systems requires a federal court scrupulously to confine itself to the jurisdiction conferred on it by Congress and permitted by the Constitution. Although § 1447(c) will govern remand in most cases, in those cases to which that section does not expressly apply the omission of coverage does not suffice to vest a federal court with a power it would not otherwise have. Even after entry of final judgment, the constitutional balance of policies that underlies the Article III grant of judicial power impels the vacation of that judgment and remand to the state court having jurisdiction when it is determined that the federal court was without power to act because of a lack of subject matter jurisdiction over a removed case. The action taken by the district court in this case, after it became aware that it had rendered a judgment when it was powerless to have done so, was precisely what the Supreme Court ordered done in *American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951), when the Court determined that a federal court in this circuit had rendered judgment without federal subject matter jurisdiction of the removed case.[3] *See also Tennessee v. Union & Planters' Bank*, 152 U.S. 454, 14 S.Ct. 654, 38 L.Ed. 511 (1894).

Although the remand order in this case was not one explicitly covered by § 1447(c), it nevertheless arguably ought to be immune from appellate review because it was entered upon a ground specified in that section. In analyzing the scope of § 1447(d)'s prohibition of review of remand orders, the Court in *Thermtron* had occasion to deal only with a remand order prompted by the district court's congested docket, a consideration not found in § 1447(c). Although the Supreme Court discussed in broad terms the necessity of construing subsections (c) and (d) *in pari materia*, it does not necessarily follow from the holding in *Thermtron* that every departure from the literal prescriptions governing remand in § 1447(c) is sufficient to avoid the proscription of review contained in § 1447(d). Because Congress has so firmly stated a general policy against appellate review of remand orders, we deem it advisable to consider the end sought to be achieved by that policy and the effect on that end of a holding that remand orders entered after final judgment are reviewable.

The policy underlying § 1447(d) identified by the court in *Thermtron* is the preclusion of delay in litigating the merits of a controversy that would attend appellate litigation

---

**3.** Neither party questions whether under § 1447 a district court has any power to remand after final judgment. *Finn* does not address the issue but impliedly holds that the court does have this power. Because we find this remand order to be improper, we will not rule on this broader point. We do note, however, that prior versions of the statute allowed remand "at any time." The addition of "before final judgment"

may reflect a congressional intent to restrict the district court's power to enter these orders. If such a rule is announced we would hope that a district court's post final judgment disposition of a removed case for lack of jurisdiction would be in a manner that allows the plaintiff to refile without facing a statute of limitations defense.

of jurisdictional issues. 423 U.S. at 351, 96 S.Ct. at 593. In speaking of one of the predecessors of § 1447(d)[4] that repealed an earlier provision[5] permitting review of remand orders in removed cases, the Court said:

> 'Congress . . . established the policy of not permitting interruption of the litigation of the merits of a removed cause by prolonged litigation of questions of jurisdiction of the district court to which the cause is removed.

*United States v. Rice*, 327 U.S. 742, 751, 66 S.Ct. 835, 839, 90 L.Ed. 982 (1946).

The considerations of prompt and efficient judicial resolution of substantive controversies that inform a rule of nonreviewability of remand orders issued before final judgment in a removed case do not apply with the same force to remand orders issued subsequent to entry of final judgment in a removed case. Whereas before final judgment the nonreviewability of remand orders serves to ensure the expeditious resolution of the case in a court of competent jurisdiction—the court in which the action was originally filed—and to minimize the expenditure of scarce federal judicial resources at the appellate level, once a case has been fully tried in a federal court and a final judgment entered, the equation alters markedly. The risk of an erroneous determination—which, of course, inheres in all human pursuits—is no greater after final judgment than before, and arguably is much less, since a district court may be expected punctiliously to assay claims of no jurisdiction before rendering an order that effectively reduces the value of its toil to naught. Deliberately subjecting the state court and the litigants to any risk of error without recourse to appellate review is a gamble, however, and the stakes in that gamble on the correctness of the district court's jurisdictional determination are much greater after a case has proceeded to judgment than before. Federal judicial resources, once expended upon the trial of a cause, obviously cannot be recouped by relitigation in a state court. An order of remand after entry of final judgment no longer fosters prompt resolution of the merits of the case, but serves instead only to delay final resolution by subjecting the litigants to a second, and the state court to a possibly duplicative, trial of the same matter. Extending the prohibition of review in § 1447(d) to a remand order entered outside the time frame specified in § 1447(c) therefore promotes not at all the congressional policy that is the foundation of § 1447(d), and can only compound unnecessarily the undesirable consequences that ineluctably accompany any rule which makes a possible judicial error unreviewable.

▇▇▇▇ Our limitation of § 1447(d) to orders entered within the time frame specified in § 1447(c) is as consistent with judicial precedent as it is with congressional policy. We have already adverted to the Supreme Court's declaration, in holding that § 1447(d) applies solely to remand orders entered upon grounds specified in § 1447(c), that "only remand orders issued under § 1447(c) *and* invoking the grounds specified therein . . . are immune from review under § 1447(d)." *Thermtron*, 423 U.S. at 346, 96 S.Ct. at 590 (emphasis added). Because issued after the entry of final judgment,[6] the remand order in this

---

4. Act of March 3, 1887, c. 373, § 2, 24 Stat. 553.

5. Judiciary Act of 1875, c. 137, § 5, 18 Stat. 472.

6. In arguing that the order is not reviewable, the International contends that its timely motions for judgment n. o. v. and new trial stayed the finality of the judgment. These motions are not included in the record before us. Nevertheless, we are of the opinion that considerations "staying" the time for filing an appeal because of pending motions are not relevant to when a judgment is "final" under § 1447(c). As noted above, the congressional policy was to allow remand for a full trial. Because a full trial has occurred at the time motions for judgment n. o. v. and for new trial are filed, these policies are not thwarted by reviewing remand orders made after entry of final judgment but before decision on such motions. A rule such as the International proposes would only encourage unscrupulous litigants to cause the expenditure of federal judicial resources and then make their post trial motions after final judgment to raise the nonwaivable jurisdictional questions forcing remand only if the outcome is

case was not, and could not have been, issued under the authority of § 1447(c), and therefore review of that order, by writ of mandamus,[7] is not precluded by § 1447(d). A remand order entered by a district court following entry of final judgment in a case is more closely akin to a remand of a removed case ordered by an appellate court than it is to a remand by the trial court before a final judgment has been rendered. Remands ordered by appellate courts returning removed cases to state courts have never been presumed to come within the bar of § 1447(d) or its predecessors.[8]

We therefore hold that an order of remand issued on whatever grounds by the district court after the entry of final judgment is reviewable in this court through a petition for a writ of mandamus. We now address the question whether remand was appropriate in this case.

### III. Propriety of the Remand Order

■ Although our notion of fair play is seriously offended when a party seeks removal of a case to a federal court, permits it to be tried and to proceed to judgment, and seeks a remand order only when the judgment turns out to be an unfavorable one, if the asserted ground for remand is the federal court's lack of subject matter jurisdiction, the concepts of equity, waiver, and estoppel are inapplicable. The subject matter jurisdiction of federal courts is limited by the Constitution and the Congress, and cannot be expanded by judicial interpretation or by the acts or consent of the parties to a case. *American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 17–18, 71 S.Ct. 534, 541–542, 95 L.Ed. 702 (1951); *Amco*

*Construction Co. v. Mississippi State Building Comm'n*, 602 F.2d 730, 733 (5th Cir. 1979).

■ The district court noted in its remand order that the requirements for diversity jurisdiction were lacking because Carter was a citizen of Georgia and the union, having members of Georgia citizenship, was deemed to be a citizen of that state under *United Steelworkers of America v. R. H. Bouligny, Inc.*, 382 U.S. 145, 146–47, 86 S.Ct. 272, 273, 15 L.Ed.2d 217 (1967). Federal question jurisdiction therefore provides the only basis for removal of this case. The basic federal question statute is 28 U.S.C. § 1441(b), which provides:

Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties.

For a case to "arise under" one of the stated sources of federal law, a right or immunity created by one of those sources "must be an element, and an essential one, of the plaintiff's cause of action. . . . [That] right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another." *Gully v. First Nat'l Bank in Meridian*, 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936) (citations omitted). The federal controversy "must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal." *Id.* at 113, 57 S.Ct. at 98; *see also Louisville*

---

unfavorable. Litigants with valid arguments are not left remediless: questions of subject matter jurisdiction can be raised at any time, even on appeal. But after one full trial, and in this case two, a litigant cannot use the remand apparatus to force expenditure of their opponents' and the state courts' resources before review by an appellate court. Our decision in *Live and Let Live, Inc. v. Carlsberg Mobile Home Properties, Ltd.–'73*, 592 F.2d 846 (5th Cir. 1979) is not to the contrary. In that case the district court expressly made the entry of judgment on the verdict subject to decision on the unresolved diversity question, which had

been raised before trial. As stated there, finality must be determined from the circumstances. *Id.* at 848. We find that the *Carter* judgment was final.

7. *See Thermtron*, 423 U.S. at 352–53, 96 S.Ct. at 593–94.

8. *See Willingham v. Morgan*, 395 U.S. 402, 404, 89 S.Ct. 1813, 1814, 23 L.Ed.2d 396 (1969); *Aetna Cas. & Sur. Co. v. Flowers*, 330 U.S. 464, 467, 67 S.Ct. 798, 800, 91 L.Ed. 1024 (1947); *Gay v. Ruff*, 292 U.S. 25, 30, 54 S.Ct. 608, 610, 78 L.Ed. 1099 (1934).

& *Nashville R. Co. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908); *Tennessee v. Union & Planters' Bank*, 152 U.S. 454, 14 S.Ct. 654, 38 L.Ed.2d 511 (1894). On the other hand, the accepted rule in this circuit is that upon removal the removal court should inspect the complaint carefully to determine whether a federal claim is necessarily presented, even if the plaintiff has couched his pleading exclusively in terms of state law. *See Romick v. Bekins Van & Storage Co.*, 197 F.2d 369 (5th Cir. 1952). The reviewing court looks to the substance of the complaint, not the labels used in it. *See Smith v. Local 25, Sheet Metal Workers Int'l Ass'n*, 500 F.2d 741, 748–49 n.6 (5th Cir. 1974).

In his order remanding the case, the district court stated, "At pre-trial, it clearly developed that the *only* claim plaintiff had was a state law claim for the intentional infliction of emotional distress by 'outrageous conduct.' *See Farmer v. Carpenters*, 430 U.S. 290, [97 S.Ct. 1056], 51. L.Ed.2d 338 (1977)." (emphasis in the original). The court then concluded that because diversity of citizenship was absent, the court had no jurisdiction over this state law claim. The trial court erred by viewing the pleading in the wrong time frame. It is a fundamental principle of law that whether subject matter jurisdiction exists is a question answered by looking to the complaint as it existed at the time the petition for removal was filed. *Pullman Co. v. Jenkins*, 305 U.S. 534, 537–38, 59 S.Ct. 347, 348–49, 83 L.Ed. 334 (1939); *Westmoreland Hospital Ass'n v. Blue Cross*, 605 F.2d 119, 123 (3d Cir. 1979). When a subsequent narrowing of the issues excludes all federal claims, whether a pendant state claim should be remanded to state court is a question of judicial discretion, not of subject matter jurisdiction. *Rosado v. Wyman*, 397 U.S. 397, 403–05, 90 S.Ct. 1207, 1213–15, 25 L.Ed.2d 442 (1970); *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Hudak v. Economic Research Analysts, Inc.*, 499 F.2d 996, 1001 (5th Cir. 1974), *cert. denied*, 419 U.S. 1122, 95 S.Ct. 805, 42 L.Ed.2d 821 (1975); *Webb v. Bladen*, 480 F.2d 306, 309 (4th Cir. 1973).

Indeed, it has often been stated that the plaintiff cannot rob the district court of subject matter jurisdiction by electing to amend away the grounds for federal jurisdiction. *E. g., St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938). We therefore review first, whether a substantial federal question exists, and, if so, second, whether judicial discretion requires this remand in any event.

### A. Federal Question Jurisdiction

The relevant portions of Carter's complaint follow:

2.

Beginning in January of 1972, the defendants [Sheet Metal Workers International Association and Local 85 of Sheet Metal Workers' International Association] conspired together, maliciously and wilfully, to deprive the plaintiff of his employment in the Sheet Metal Industry and of his means of livelihood, to cause the plaintiff to be denied employment in this Industry, to deny the plaintiff his right and privilege to be a member of defendants' union, to impair the plaintiff's reputation among prospective employers, and to subject the plaintiff to embarrassment, scorn and derision among his friends, associates, relatives and fellow employees.

3.

In January of 1972, pursuant to, and in furtherance of, said conspiracy defendants' agents, officers and members, acting for and under the specific instructions of all defendants herein, maliciously, and without probable cause therefor, used the threat of union coercion and pressure to cause the plaintiff to be denied employment of a job in his industry for which he was ready, willing and able to perform.

4.

In March of 1972, pursuant to this same scheme and conspiracy these individuals coerced and forced an employer of

the plaintiff to dismiss the plaintiff from a job in his industry which he then presently held.

Carter's complaint clearly alleges tortious conduct under Georgia law, as was established in another appeal during this protracted litigation. *Sheet Metal Workers Int'l Ass'n v. Carter*, 133 Ga.App. 872, 212 S.E.2d 645 (1975), *cert. denied*, 423 U.S. 1078, 96 S.Ct. 866, 47 L.Ed.2d 89 (1976). The question is whether it also alleges actions within the jurisdiction of the federal courts.

The International's removal petition, filed June 14, 1978, discloses its initial position that the allegations of Carter's complaint sufficiently pleaded a federal claim, as to which removal would be proper. Specifically, the International asserted that Carter's allegations that he had been denied employment in the sheet metal industry through some conduct by the International, and that he had been denied a right to be a member of that union were claims arising under the Labor Management Reporting and Disclosure Act, 29 U.S.C. §§ 401, 402, and 411 and under the Labor Management Relations Act, 29 U.S.C. §§ 158, 159 or 29 U.S.C. § 185.

1. LMRDA.—The Labor Management Reporting and Disclosure Act of 1959 (LMRDA), also known as "the Landrum-Griffith Act, "contains a congressional finding that there have been breaches of trust and failures in the observance of high standards of responsibility in the labor and management fields. The Act was passed for the purposes declared including the elimination of improper practices." *Clinton v. Hueston*, 308 F.2d 908, 910 (5th Cir. 1962). The "bill of rights" of the LMRDA is found at 29 U.S.C. § 411 (1976). Presumably the International intended to rely on some provision in that section when, in its Petition for Removal, it said: "[T]he allegation of denial of membership falls squarely within the LMRDA, 29 U.S.C. § 401, § 402, § 411." These sections guarantee members equal rights to nominate candidates, to vote, to attend meetings, to meet with other members, to express views, and to institute court

actions. The sections also regulate the union's ability to increase dues, and to fine, suspend, expel, or "otherwise discipline" members.

▆▆▆ Whether Carter's allegations stated a claim under the LMRDA was a question without a clear answer at the time the petition for removal was filed. The LMRDA accords rights to every "member." That term is broader in scope than one might originally think in that Congress defined the term to include "any person who has fulfilled the requirements for membership in such organization." 29 U.S.C. § 402(*o*) (1976). In *Hughes v. Local 11 of Int'l Ass'n of Bridge, Structural and Ornamental Ironworkers*, 287 F.2d 810 (3d Cir.), *cert. denied*, 368 U.S. 829, 82 S.Ct. 51, 7 L.Ed.2d 32, the Third Circuit held that a dismissal for lack of subject matter jurisdiction was improper once the plaintiff had alleged a substantial claim under the LMRDA. Whether the plaintiff actually was a "member" was a question of whether the complaint asserted a claim upon which relief could be granted, not a question of jurisdiction. *Id.* at 813–14. Several cases expressly or impliedly followed this lead. *Gavin v. Structural Iron Workers Local No. 1*, 553 F.2d 28 (7th Cir. 1977); *Parish v. Legion*, 450 F.2d 821 (9th Cir. 1971); *Sheridan v. United Bhd. of Carpenters*, 306 F.2d 152, 156 (3d Cir. 1962); *Addison v. Grand Lodge of Int'l Ass'n of Machinists*, 300 F.2d 863, 868 (9th Cir. 1962); *Vincent v. Plumbers & Steamfitters Local No. 198*, 384 F.Supp. 1379 (M.D. La.1974); *Axelrod v. Stoltz*, 264 F.Supp. 536 (E.D.Pa.1967), *aff'd*, 391 F.2d 549 (3d Cir. 1968); *Cornelio v. Metropolitan District Council of Philadelphia*, 243 F.Supp. 126 (E.D.Pa.1965), *aff'd*, 358 F.2d 728 (3d Cir. 1966), *cert. denied*, 386 U.S. 975, 87 S.Ct. 1167, 18 L.Ed.2d 134 (1967); *Ferger v. Local 483 of Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers*, 238 F.Supp. 1016 (D.N.J.1964), *aff'd*, 342 F.2d 430 (3d Cir. 1965). *See also Moynahan v. Pari-Mutuel Employees Guild of California*, 317 F.2d 209, 211 n.3 (9th Cir.), *cert. denied*, 375 U.S. 911, 84 S.Ct. 207, 11 L.Ed.2d 150 (1963). This distinction is

clearly correct. The district court has jurisdiction if a complaint states a substantial federal claim, and the court can then assess the legal sufficiency of the complaint. *Levering & Garrigues Co. v. Morrin*, 289 U.S. 103, 105, 53 S.Ct. 549, 550, 77 L.Ed. 1062 (1933). A complaint's allegations are insubstantial if they are obviously without merit or if prior decisions foreclose controversy on the subject. *Id.* at 105, 53 S.Ct. at 550. *See also Romero v. International Terminal Operating Co.*, 358 U.S. 354, 359, 79 S.Ct. 468, 473, 3 L.Ed.2d 368 (1959); *Montana-Dakota Utilities Co. v. North-Western Public Service Co.*, 341 U.S. 246, 249, 71 S.Ct. 692, 694, 95 L.Ed. 612 (1951); *Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946).

As indicated above, the claim under the LMRDA was not obviously meritless. Some courts had indicated, however, that the LMRDA does not countenance a claim for wrongful denial of membership. *Abrams v. Carrier Corp.*, 434 F.2d 1234, 1254 (2d Cir. 1970), *cert. denied*, 401 U.S. 1009, 91 S.Ct. 1253, 28 L.Ed.2d 545 (1971). *See also Gavin v. Structural Iron Workers Local No. 1*, 553 F.2d 28 (7th Cir. 1977); *Moynahan v. Pari-Mutuel Employees Guild of California*, 317 F.2d at 210; *MacKenzie v. Local 624, Int'l Union of Operating Engineers*, 472 F.Supp. 1025 (N.D.Miss.1979); *Vincent v. Plumbers & Steamfitters Local No. 198*, 409 F.Supp. 206 (M.D.La.1976). The cases distinguished situations such as in *Hughes*, in which plaintiffs who were members of the national and one local attempted to transfer to another. *See Parish v. Legion*, 450 F.2d at 824. In *Hughes* the transferee local had not reserved the right to refuse membership. *See also Gavin v. Structural Iron Workers*, 553 F.2d at 30–31. If the local reserved that right, or required a vote for admittance, the plaintiff had not "fulfilled the requirements for membership," and was not a "member" eligible to sue under the LMRDA. *See Moynahan v. Pari-Mutuel Employees*, 317 F.2d at 210.

Construing the complaint liberally, the allegations are sufficient to state a substantial federal claim under the LMRDA. The viability of an action for denial of membership was not such a settled question that the district court was deprived of subject matter jurisdiction, especially since the Supreme Court and this circuit have never ruled on the issue. Furthermore, the allegations in the complaint do not foreclose the possibility that Carter was attempting to transfer local membership or that the local had not reserved power to refuse membership.[9] In addition, the claim that the unions attempted to deny him employment in the industry arguably could be an allegation of improper disciplinary action. *See Keene v. International Union of Operating Engineers*, 569 F.2d 1375, 1379–81 (5th Cir. 1978) (blacklisting may be "other discipline" under 29 U.S.C. § 411(a)(5)). The district court had jurisdiction over the LMRDA claim. Whether relief could have been granted is a separate question which we need not, and therefore will not, decide at this time.

2. LMRA Section 301.—The federal district courts have jurisdiction over suits for violations of contracts between an employer and a labor organization under section 301(a) of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a) (1976). An employee can bring suit under section 301 against his union for breach of the collective contract when the breach is related to breach of the union's duty of fair representation. *Humphrey v. Moore*, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964). *See Amalgamated Ass'n of Street, Electric Railway & Motor Coach Employees of America v. Lockridge*, 403 U.S. 274, 299, 91 S.Ct. 1909, 1924, 29 L.Ed.2d 473 (1971); *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

In its Petition for Removal, the International asserted: "One of the duties

---

**9.** Carter states in his Reply Memorandum that he actually was attempting to transfer membership from one local to another. This fact, however, is not clearly alleged in the complaint.

*But cf. Villarreal v. Brown Express, Inc.*, 529 F.2d 1219 (5th Cir. 1976) (in practice the courts consider the facts disclosed on the record as a whole).

arising under section 301 is the Union's duty to fairly represent all employees coming under the protection of a collective bargaining agreement." Although the union does have this duty, a breach of the duty of fair representation is not always also a breach of the collective contract. *See Smith v. Local 25, Sheet Metal Workers Int'l Ass'n*, 500 F.2d 741, 745–46 (5th Cir. 1974). The duty of fair representation is an independent statutory duty that arises from the union's position as exclusive bargaining agent under sections 8 and 9 of the labor laws. *Ford Motor Co. v. Huffman*, 345 U.S. 330, 337, 73 S.Ct. 681, 685, 97 L.Ed. 1048 (1953). When the allegations assert a breach of the duty of fair representation without a corresponding breach of the collective contract, federal jurisdiction cannot be grounded on section 301.

Carter's complaint nowhere mentions the collective bargaining agreement. While mindful that the courts should construe duty of fair representation complaints to guard against their dismissal, *Czosek v. O'Mara*, 397 U.S. 25, 27, 90 S.Ct. 770, 772, 25 L.Ed.2d 21 (1970), in the absence of any mention of the collective bargaining contract we find it necessary to hold that there is no jurisdiction under section 301. *Cf. Smith v. Local 25, Sheet Metal Workers Int'l Ass'n*, 500 F.2d at 744, 745–46 (plaintiffs had not alleged violation of collective agreement; no section 301 suit based solely on duty of fair representation).

 3. Sections 8 & 9.—A union has a duty to represent fairly all the employees in a bargaining unit because of the rights granted the union under sections 8(b) and 9(a) of the federal labor laws, 29 U.S.C. §§ 158(b), 159(a) (1976). *Vaca v. Sipes*, 386 U.S. at 177, 87 S.Ct. at 909; *Smith v. Local 25, Sheet Metal Workers Int'l Ass'n*, 500 F.2d at 746. These sections are part of an "Act of Congress regulating commerce" over which the district courts have original jurisdiction under 28 U.S.C. § 1337 (1976).[10] *See Amalgamated Ass'n of Street, Electric*

*Railway & Motor Coach Employees v. Lockridge*, 403 U.S. at 274, 91 S.Ct. at 1909; *Smith v. Local 25, Sheet Metal Workers Int'l Ass'n*, 500 F.2d at 748–49. Unlike plaintiffs under section 301, Carter need not be a member of the union to assert a duty of fair representation claim; the union's duty extends to all those in the unit. A union breaches its duty if its conduct reflects hostile discrimination based on irrelevant and invidious considerations. *Steele v. Louisville & Nashville R. R.*, 323 U.S. 192, 203, 65 S.Ct. 226, 232, 89 L.Ed. 173 (1944). "A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. at 190, 87 S.Ct. at 916 (1967).

 Carter's complaint clearly meets these standards. He alleges the unions discriminated against him without cause by maliciously conspiring to deprive him of employment, by maliciously causing him denial of employment in January of 1972, and by forcing an employer to dismiss him in March of 1972. The district court had federal question jurisdiction over the breach of the duty of fair representation claim.

### B. Pendent Jurisdiction

 Because the district court had jurisdiction over at least two federal questions in this suit, it also had the jurisdictional power to decide Carter's state law claims which arose from the same nucleus of operative fact. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). Pendent jurisdiction is a doctrine of discretion: "Its justification lies in considerations of judicial economy, convenience and fairness to litigants . . ." *Id.* at 726, 86 S.Ct. at 1139. Some of the factors to be considered are whether the federal claims were dismissed before trial, whether the state claims predominate, whether the state claims are closely tied to

---

**10.** 28 U.S.C. § 1337 (1976) provides:

The district courts shall have original jurisdiction of any civil action or proceeding aris-

ing under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies.

questions of federal policy, and whether the jury is likely to be confused by the treatment of divergent legal theories of relief. *Id.* at 726–27, 86 S.Ct. at 1139–40. Any speculation that *Gibbs* required dismissal when all federal claims were eliminated before trial was soundly quieted in *Rosado v. Wyman*:

> We are not willing to defeat the common-sense policy of pendent jurisdiction—the conservation of judicial energy and the avoidance of multiplicity of litigation—by a conceptual approach that would require jurisdiction over the primary claim at all stages as a prerequisite to resolution of the pendent claim. The Court has shunned this view.

397 U.S. 397, 405, 90 S.Ct. 1207, 1214, 25 L.Ed.2d 442 (1970) (footnotes and citations omitted).

■■■ A review of the factors influencing discretion reveals that while the district court could have dismissed the state claim, it would not have been a clear abuse of discretion to refuse to do so after the final judgment. Certainly judicial economy would weigh against a third trial. Fairness to Carter, upon whom the International imposed federal jurisdiction, also militates for retention of pendent jurisdiction over the claim. Although the Court noted in *Gibbs* that it might even be appropriate to dismiss a pendent state claim after full trial, this case is not one in which the plaintiff was asking the federal court to tolerate a purely state claim. 383 U.S. at 727, 86 S.Ct. at 1139. The district court could have properly decided to retain pendent jurisdiction over the state law case. *See Hudak v. Economic Research Analysts Inc.*, 499 F.2d 996, 1001 (5th Cir. 1974). Because the district court reluctantly concluded it had no jurisdiction, however, it never reached this question. We therefore return the case to the district court for consideration of whether, under all the surrounding circumstances, it should accept the state law claim under a discretionary exercise of pendent jurisdiction thus avoiding further duplicitous judicial efforts.

The writ is GRANTED. The case is returned to the district court with directions to VACATE the remand order, thereby allowing consideration of the pendent jurisdiction questions.