**Melvin ZAHNOW, Plaintiff,**

v.

**GREAT LAKES DISTRIBUTING CO., et al., Defendants.**

**Civ. No. 81–74656.**

United States District Court, E. D. Michigan, S. D.

July 29, 1982.

Geoffrey N. Fieger, Southfield, Mich., for plaintiff.

James M. Moore, and Virginia F. Metz, Detroit, Mich., for defendants.

## MEMORANDUM OPINION

RALPH M. FREEMAN, District Judge.

Plaintiff filed this civil action in Wayne County Circuit Court seeking to recover damages from his former employer, Great Lakes Distributing Co., and his union, International Brotherhood of Teamsters, Local 1038, allegedly suffered as the result of his discharge from employment on August 16, 1979. He claims that the defendant employer discharged him because he is handicapped, in violation of M.C.L.A. § 37.-1202. He further asserts that his discharge was "not for just cause" and was contrary to the collective bargaining agreement between Great Lakes and Local 1038. Plaintiff also claims that the defendant union breached its duty to fairly represent him by failing to diligently process his grievance arbitrarily and in bad faith.

Plaintiff bases jurisdiction on M.C.L.A. § 37.1101 *et seq.*, the Michigan Handicappers' Civil Rights Act, which prohibits employers and labor unions from discriminating against an individual because of a handicap. *See* M.C.L.A. § 37.1202, .1204. Defendant Great Lakes removed this action to federal court, asserting that federal court has original jurisdiction over plaintiff's claim of violation of the collective bargaining agreement and his claim for breach of the union's duty of fair representation under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185.

Plaintiff Melvin Zahnow was employed by Yagoda Distributing Co. in 1963 as a warehouseman. He later began accompanying drivers of his employer's beer delivery trucks as a helper and filling in occasionally as a truck driver for drivers who were on vacation or ill. In April 1979, defendant Great Lakes purchased Yagoda Distributing. Plaintiff was assigned to drive a beer truck every day after defendant acquired Yagoda.

On August 14, 1979, plaintiff discovered that he had collected $273.43 too much money from customers on his delivery route. He took the money home with him that evening intending, he claims, to turn it over to his employer the next day. He did not turn over the money until August 16, 1979, after he was asked to do so by a Great Lakes supervisory employee. Great Lakes discharged Zahnow on that same day, asserting that he had violated a company policy which required employees to report suspected overages at the end of the day and turn in the excess money. Plaintiff claims he was unaware of such a policy and that he had simply forgotten to turn in the money.

At the suggestion of a union representative who was present at the time he was discharged, plaintiff went to the union hall and spoke with either the union president or the secretary-treasurer. A few days later plaintiff and a union representative met with company officials to discuss his discharge. The company refused to reinstate him. On August 31, 1979, Zahnow filled out a grievance, which stated that plaintiff claimed his discharge was unfair and without just cause. There is no indication in the record that this written grievance was ever submitted to the employer, although counsel for the union at oral argument on the motion asserted that the grievance was submitted to Great Lakes in late August 1979. On October 18, 1979, the union held an executive board meeting, which plaintiff and his mother-in-law attended and presented their case. The union told them that they would be notified of the board's decision regarding whether to proceed further with Zahnow's grievance. In a private session that same day, the union board decided not to pursue the grievance. Mrs. Forster, plaintiff's mother-in-law, with whom he lived, called a union official the week after the October 18 meeting and learned that the union had decided not to proceed with plaintiff's grievance. Zahnow

filed this action in Wayne County Circuit Court on November 30, 1981.

This matter is before the Court on summary judgment motions filed by the union and Great Lakes. The employer's motion for summary judgment is directed towards plaintiff's claim under the Michigan Handicappers' Civil Rights Act and does not address his breach of collective bargaining agreement claim. Federal jurisdiction in this action is based on plaintiff's unfair representation claim against the union and his breach of contract claim against his employer. His claims against the union and his employer under the Michigan Handicappers' Civil Rights Act may be considered by this Court only as pendent to his federal claims under the LMRA. In order to prevail against his employer on his breach of collective bargaining agreement claim, plaintiff must first prove that the union breached its duty of fair representation. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 570–71, 96 S.Ct. 1048, 1059–60, 47 L.Ed.2d 231 (1976). Therefore, plaintiff's federal claims and the jurisdiction of this Court over this action, depend on whether his unfair representation claim against the union can survive the union's motions for summary judgment.

■ The union has filed two motions for summary judgment, one directed towards the merits of plaintiff's fair representation claim, and the other raising a statute of limitations defense. The Court will consider the latter motion first since if it has merit, it will be unnecessary to consider the former motion. The union relies on a very recent Sixth Circuit opinion, *Badon v. General Motors Corp.*, 679 F.2d 93 (6th Cir. 1982) in which the court held that a federal court in Michigan must apply the six month statute of limitations period found in section 10(b) of the NLRA to an unfair representation claim against a union and to a § 301 breach of contract suit against an employer. An employee must file his unfair representation claim or his breach of contract claim within six months after the employer's decision complained of has become final according to the contractually established dispute resolution process. *Badon, supra* at 98.

■ Article 16.2 of the collective bargaining agreement between Local 1038 and Great Lakes provides that disciplinary action, including discharge, shall be deemed final unless a written grievance is presented to the employer within three days from the time notice of the disciplinary action is given. Article 16.3 of the agreement provides that a grievance shall be deemed withdrawn unless the union requests arbitration within 10 days after the grievance has been submitted to the employee's supervisor. At oral argument on these motions, however, counsel for the union indicated that the contractual time limits had been waived by the union and the employer until the union decided whether to arbitrate plaintiff's grievance.

Plaintiff was told in person on August 16, 1979 that he was discharged and was informed of the reasons why. The union has submitted a letter from Great Lakes to Zahnow dated August 16, 1979, which also states the reason for his discharge and indicates that he had three days in which to submit a written grievance to the employer. Plaintiff and a union representative met with the employer around August 20, 1979, but a written grievance was not prepared until August 31, 1979. It is not clear from the record in this case whether this written grievance was submitted to the employer. What is clear, however, is that the union made a final decision not to arbitrate plaintiff's grievance on October 18, 1979.

The union alleges, and plaintiff does not dispute, that Zahnow became aware of the union's decision not to arbitrate by November 1979 through his mother-in-law, with whom he lived, and who was informed of the union's decision by union officials in late October, 1979. Since it is not clear from the record if or when plaintiff's grievance was submitted to the employer, and it appears that the contractual time limits had been waived, the court deems the employer's action as final for the purposes of commencement of the statute of limitations in this case to be when the plaintiff learned of

the union's decision not to arbitrate, which was some time in late October or early November 1979. He did not file this lawsuit until November 1981, clearly more than six months after the employer's decision had become final under the contractually established dispute resolution process. As a result, both his unfair representation claim against the union and his breach of contract claim against Great Lakes are barred by the statute of limitations rule adopted by the Sixth Circuit in *Badon.*

■ Plaintiff's only response to the *Badon* case is that the court intended the rule enunciated therein to apply prospectively and therefore it is not applicable in the instant case. This Court finds no support in the Badon opinion for the proposition that the six-month statute of limitations rule does not apply retroactively and concludes that plaintiff's unfair representation claim against the union and his breach of collective bargaining agreement claim against Great Lakes must be dismissed.

■ Perhaps in anticipation of this conclusion, plaintiff has moved in the alternative for remand of this action to Wayne County Circuit Court for determination of his remaining state claims. Removal jurisdiction of this action is based on federal question jurisdiction, i.e., § 301 of the LMRA, not diversity jurisdiction. A federal court has the power to hear pendent state claims even after the federal claim which provided the basis for removal jurisdiction has been removed from a case. *Watkins v. Grover,* 508 F.2d 920 (9th Cir. 1974). Whether a pendent state claim will be remanded after the federal claims have been eliminated from a removed case is left to the discretion of the trial court. *In Re Carter,* 618 F.2d 1093 (5th Cir. 1980). In deciding whether to exercise its discretion to hear pendent state claims absent a federal claim, a federal court must consider the factors articulated in *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725–27, 86 S.Ct. 1130, 1138–39, 16 L.Ed.2d 218 (1966), which focus on judicial economy, convenience, and fairness to litigants.

■ Plaintiff urges that his claims for breach of the collective bargaining agreement and unfair representation have an independent basis in state common law and the fact that such claims are barred in federal court as untimely does not prevent this Court from remanding such claims to a state court. Federal and state courts do indeed have concurrent jurisdiction over claims against employers for breach of a collective bargaining agreement and against unions for unfair representation. But the Supreme Court has made it clear that state courts must apply federal substantive law in their exercise of such concurrent jurisdiction. *Textile Workers v. Lincoln Mills,* 353 U.S. 448, 457, 77 S.Ct. 912, 918, 1 L.Ed.2d 972 (1957); *Charles Dowd Box Co. v. Courtney,* 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962); *Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 103, 82 S.Ct. 571, 576–77, 7 L.Ed.2d 593 (1962); *Vaca v. Sipes,* 386 U.S. 171, 177, 87 S.Ct. 903, 909, 17 L.Ed.2d 842 (1967); *Pompey v. General Motors Corp.,* 385 Mich. 537, 560, 189 N.W. 243 (1971); *Glowacki v. Motor Wheel Corp.,* 67 Mich.App. 448, 458, 241 N.W.2d 240 (1976).

■ Since Congress has not expressly provided a time limitation for actions under section 301, federal law requires federal courts to apply the most appropriate state statute of limitations to section 301 suits. *International Union UAW v. Hoosier Cardinal Corp.,* 383 U.S. 696, 703–05, 86 S.Ct. 1107, 1111–1113, 16 L.Ed.2d 192 (1966). Therefore, until *Baden* both federal courts in Michigan and Michigan courts have applied Michigan's three-year tort statute of limitations to such claims. *See, e.g., Echols v. Chrysler Corp.,* 633 F.2d 722 (6th Cir. 1980); *Glowacki v. Motor Wheel Corp., supra.* However, in view of *United Parcel Service v. Mitchell,* 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981), which held that the 90-day New York state statute pertaining to the vacation of arbitration awards was the appropriate statute of limitations for section 301 unfair representation suits, the Sixth Circuit in *Badon v. General Motors Corp., supra* found that Michigan law failed to provide an appropriate statute of limitations, and that the most appropriate

limitations period is the six-month period found at section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b). Plaintiff argues that Michigan courts would not apply the six-month limitations period, but offers no authorities in support of this position.

As noted previously, there is no independent state cause of action for breach of a collective bargaining agreement or unfair representation. With respect to such claims, the Supreme Court in *Lincoln Mills* stated that:

> Federal interpretation of the federal law will govern, not state law. But state law, if compatible with the purpose of § 301, may be resorted to in order to find the rule that will best effectuate federal policy. Any state law applied, however, will be absorbed as federal law and will not be an independent source of private rights.

*Textile Workers v. Lincoln Mills, supra* 383 U.S. at 457, 77 S.Ct. at 918. The Supreme Court in *International Union, UAW v. Hoosier Corp., supra* held that the question of the timeliness of a section 301 suit is a federal question, since "in § 301 suits the applicable law is 'federal law, which the courts must fashion from the policy of our national labor laws,'" *citing Textile Workers v. Lincoln Mills, supra* 383 U.S. at 456, 77 S.Ct. at 917. In *Badon v. General Motors, supra*, the Sixth Circuit found that there was no appropriate Michigan statute of limitations that would effectuate the policy underlying the federal labor laws, and adopted the six-month statute of limitations found in the NLRA for section 301 suits. In selecting this period of limitation the court relied on the view of Justice Stewart in his concurrence in *United Postal Service v. Mitchell, supra* 451 U.S. 65 at 71, 101 S.Ct. at 1565, 1568.

▪ Michigan courts certainly cannot come to a different conclusion than did a federal appellate court on the federal question of the timeliness of a lawsuit filed to enforce a federal cause of action. To do so would encourage the same forum shopping and other difficulties noted in *Guaranty*

*Trust Co. v. York,* 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), which led the Supreme Court to conclude that a federal court in a diversity case should adopt the appropriate state statute of limitations rather than invoke a different federal time limitation. The Supreme Court reasoned that the intention of *Erie R. Co. v. Thompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed.2d 1188 (1938) was:

> to insure that in all cases where a federal court is exercising jurisdiction solely because of diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court.

*Guaranty Trust Co. v. York, supra* 326 U.S. at 109, 65 S.Ct. at 1470. Likewise, when a state court is exercising jurisdiction solely because of a federally created right, the outcome of the litigation should be substantially the same in the state court as it would be in a federal court. Following the reasoning in *Guaranty Trust* by analogy, it appears that a Michigan court must apply the statute of limitations adopted as federal law in breach of collective bargaining and unfair representation suits, and plaintiff's claims would, accordingly, be barred as untimely in Michigan courts as well as in federal court.

▪ Turning to plaintiff's claims under the Michigan Handicappers' Civil Rights Act, one of the more important factors discussed in *Gibbs* is the well established policy of avoiding needless decisions of state law by federal courts. *Gibbs, supra* 383 U.S. at 726 n. 15, 86 S.Ct. at 1139 n.15. For example, in *Brough v. United Steelworkers of America,* 437 F.2d 748 (1st Cir. 1971), the First Circuit concluded that it was improper for a district court to exercise pendent jurisdiction over a common law negligence claim against a union after the union's motion for summary judgment on plaintiff's unfair representation because interpretation of state common law would be needed to resolve the remaining claim. Similarly, in the instant case, consideration of plain-

tiff's remaining claims against his employer and the union will require interpretation of the Michigan Handicappers' Civil Rights Act. Indeed, Great Lakes' motion for summary judgment is based in part on an argument that plaintiff's alleged mental deficiencies do not constitute a handicap under the Act as a matter of law.

Great Lakes urges the Court to exercise its discretion to retain jurisdiction over plaintiff's pendent state claims, arguing that in view of the time and expense already incurred in connection with the pursuit of this case in federal court, remand to state court would not serve judicial economy. Indeed, the trial date in this matter is imminent, and it appears that the majority of discovery has been completed. However, the District of Columbia circuit recently noted that looking solely to judicial economy considerations in deciding to retain pendent state claims may be error when the state claim involves a question for which state jurisprudence gives inadequate guidance. *Financial General Bankshares Inc. v. Metzger*, 680 F.2d 768 (D.C.Cir.1982). The Michigan Handicappers' Civil Rights Act, although effective in 1976, has been rarely interpreted by Michigan courts. Indeed, defendants rely on a single case, *Dady v. Rochester School Board*, 90 Mich.App. 381, 282 N.W.2d 328 (1979) in support of its motion for summary judgment, which applies a section of the act different from that which is involved in this case. Since resolution of plaintiff's remaining claims will depend so heavily on interpretation of a Michigan statute which even the Michigan courts have not frequently addressed, it seems preferable that a determination of the issues raised by plaintiff in this action be made by a court of the state of Michigan rather than in a federal forum. Therefore, plaintiff's claims under Michigan's Handicappers' Civil Rights Act will be remanded to Wayne County Circuit Court.

In summary, the defendant union's supplementary motion for summary judgment will be granted and plaintiff's claims for breach of the collective bargaining agreement and unfair representation will be dismissed. The defendant employer's motion for summary judgment will be denied and plaintiff's claims under the Michigan Handicappers' Civil Rights Act will be remanded to Wayne County Circuit Court. An appropriate order shall be submitted.