Melvin SMITH, Plaintiff,

v.

BABCOCK & WILCOX COMPANY, REFRACTORIES DIVISION, AUGUSTA, GEORGIA, First Defendant,

v.

INDUSTRIAL MAINTENANCE AND PRODUCTION WORKERS LOCAL UNION NO. 1137, Second Defendant.

Civ. A. No. CV181–182.

United States District Court,
S.D. Georgia,
Augusta Division.

Sept. 29, 1982.

---

Jack L. Cooper, Augusta, Ga., for plaintiff.

Michael C. Garrett, Augusta, Ga., for second defendant.

J. Thomas Kilpatrick, Atlanta, Ga., for first defendant.

## ORDER

BOWEN, District Judge.

This is an action under section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, for alleged employer violation of a collective bargaining agreement and union breach of its duty of fair representation. Both defendants have submitted motions for summary judgment.

## I. UNDISPUTED FACTS

The following facts, viewed in the light most favorable to the plaintiff, emerge as uncontested. On September 14, 1978, de-

fendant Babcock & Wilcox Company of Augusta, Georgia, (Babcock), entered into a three year collective bargaining agreement with defendant Industrial Maintenance and Production Workers, Local No. 1137 (union). Plaintiff Smith was a member of the union. As of March 24, 1980, he had been employed by Babcock for over seven years as a clean-up man. He had a good work history. On March 24, 1980, the plaintiff was late in reporting to work. A heated argument ensued between Smith and his foreman. As a result of the argument, Babcock discharged Smith. The plaintiff reported his discharge to the union and the union filed a grievance against Babcock. Smith was reinstated on April 8, 1980, but he was assigned to a different job. As a result, the union requested arbitration. An arbitration hearing was held on November 10, 1980. On March 13, 1981, the arbitrator issued his decision, requiring Babcock immediately to reinstate Smith to his former position. Babcock then notified the union that Smith's job had been merged into another

and that Smith therefore could not be reinstated in his former position. Babcock requested the union to resubmit to arbitration the issue of what job Smith should be given. On March 17, 1981, the plaintiff began to picket the union, carrying a sign stating "Union Unfair to Union Member." On March 27, 1981, the trial board of the union met and recommended expulsion of Smith because of his picketing. On April 7, 1981, the union membership voted to expel Smith from the union. The union filed suit on May 11, 1981, in this Court to enforce the arbitrator's award of March 13, 1981.[1] On August 6, 1981, Smith filed this lawsuit.

## II. THE UNION

Plaintiff makes the following allegations concerning the defendant union:

plaintiff complained of the second defendant's inaction and refusal to follow up on the grievance procedure of this plaintiff and finally, in desperation, pick-

1. On May 22, 1981, an order was entered in the enforcement action (CV181–96), which remanded the award back to the arbitrator for determination of the following issues:

    (1) Whether or not it is impossible for defendant to reinstate grievant Melvin Smith to his former job position.

    (2) Whether the rights of management under the Collective Bargaining Agreement between plaintiff and defendant include the right to abolish the job position which was formerly held by grievant Melvin Smith.

    (3) Whether, if the company had the right to abolish the job position, the abolition of the job and attendant inability to employ grievant Melvin Smith in that job was exercised in good faith.

    (4) Considering the above resolutions, in what employment position should grievant Melvin Smith be placed, either in his original department or elsewhere.

    (5) To the extent the Arbitrator deems proper, what shift, level of pay and seniority status should be provided to grievant Melvin Smith to resolve entirely any and all disputes between the plaintiff and defendant regarding the Arbitration Award.

After some delay caused by the dilatory behavior of counsel, the award was reconsidered by the Honorable Robert W. Foster and Arbitrator Foster rendered his second award on May 15, 1982. Arbitrator Foster reached the following conclusions:

AWARD

After careful consideration of the evidence and arguments of the parties, and based on the reasons set out above, I find and conclude with respect to each of the remand issues as follows:

    1. It is not impossible for Defendant (the Company) to reinstate Grievant Smith to his former job position.

    2. While the rights of management under the collective bargaining agreement between Plaintiff (Union) and Defendant (Company) include the right to abolish job positions under appropriate circumstances, that right was improperly exercised with respect to the job formerly held by Grievant Melvin Smith.

    3. The Company's abuse of discretion as found by this decision did not constitute bad faith.

    4. Considering the above resolutions Grievant Melvin Smith should be placed in his original department in the clean-up, set-up position as ordered by the initial award of this arbitrator.

    5. In order to resolve entirely any and all disputes between these parties regarding the Arbitration Award, the Grievant Melvin Smith should be returned to the same shift that he worked prior to the initial improper transfer at the present Level 9 job with no loss of seniority and made whole by payment of all resulting loss of earnings.

The Court entered an order on August 13, 1982, which provided for the enforcement of the arbitrator's second award.

eted the second defendant to secure some sort of relief.

13. That as a result of the picketing by the plaintiff of the second defendant, he was dismissed from the labor union, which was a violation of his right of freedom of speech.

\*　\*　\*　\*　\*　\*

18. That because of the fact that the plaintiff has been removed from the union by the second defendant, they cannot effectively represent him in any arbitration proceeding and he was without effective relief through these proceedings.

On deposition, Smith was asked the basis for his suit against the union:

Q. ... Then with respect to your allegations in this lawsuit that the union didn't represent you ...

A. Properly.

Q. ... that's what you're talking about.

A. I'm saying that the union didn't represent me properly. There's a difference between representing and representing properly.

Q. Absolutely. You're saying then that the union took too long in the arbitration procedure and the grievance procedure, that they told you that you didn't have a strong case.

A. Right. And did not represent me properly ....

Q. All right. In what way should they have represented you that they did not?

A. As I stated once before, that the union refused to get a restraining order against Babcock and Wilcox to refrain Babcock and Wilcox putting me on the keel [sic]. The union kept discouraging me saying that Babcock and Wilcox was in the right and saying that if they take it to arbitration that Babcock and Wilcox was going to win ....

\*　\*　\*　\*　\*　\*

Q. Now, I think in your lawsuit, you also say in paragraph 13 that you were dismissed from the labor union, which was a violation of your right to freedom of speech.

A. Not only I'm saying it's a violation of my right of freedom of speech, I'm saying that the union constitution states that only two ways that you can put somebody out of the union and the two ways the union constitution speaks of is one, for not paying union dues and two, is worthless slandering the union. And I asked the business manager did he know what worthless slandering the union was. And he cannot tell me. And I have to tell that worthless slandering the union was worthless lying against the union. And there's no way in the newspaper print that I worthless lied against the union. (p. 70, ln. 1–13, p. 71, ln. 17–25, p. 72, ln. 8–24).

▮▮▮ Under sections 8(b) and 9(a) of the NLRA, 29 U.S.C. §§ 158(b), 159(a), a union, as the exclusive bargaining representative of its member employees, has a "statutory duty fairly to represent all of those employees...." *Vaca v. Sipes,* 386 U.S. 171, 177, 87 S.Ct. 903, 909, 17 L.Ed.2d 842 (1967) (citing, *inter alia, Ford Motor Co. v. Huffman,* 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953)); *see Freeman v. O'Neal Steel, Inc.,* 609 F.2d 1123, 1125 (5th Cir.), *cert. denied,* 449 U.S. 833, 101 S.Ct. 104, 66 L.Ed.2d 39 (1980). This duty extends to all union dealings with the employer, not simply to matters pertaining to a collective bargaining agreement. *In re Carter,* 618 F.2d 1093, 1104 (5th Cir. 1980), *cert. denied,* 450 U.S. 949, 101 S.Ct. 1410, 67 L.Ed.2d 378 (1981). The duty does not extend, however, to union conduct affecting an individual's relationship within the union structure. *Bass v. International Brotherhood of Boilermakers,* 630 F.2d 1058 (5th Cir. 1980). In this case it is apparent that plaintiff is proceeding against the union both on the theory that the union breached its duty of fair representation under the collective bargaining agreement and that the union violated his civil rights by expelling him from the union. Only plaintiff's fair representation claim will be addressed since it is uncontested that this action is brought pursuant to section 301 of the LMRA, and plaintiff's claim concerning his expulsion from the union is not cognizable as an independent claim under that statute. *Id.*

194

■ In regard to plaintiff's fair representation claim, a careful review of the record in this case reveals that such record is devoid of any evidence to support a finding that plaintiff's grievance was processed discriminatorily, arbitrarily or in bad faith. *See Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967). The grievance was filed the day after the incident occurred. The plaintiff was reinstated within two weeks and during the pendency of arbitration was employed with no loss of seniority or reduction in pay. The plaintiff has introduced no evidence showing that the union did not properly present his case before the arbitrator. Plaintiff complains that the union attempted to discourage him from pursuing his claim. Plaintiff, however, did not abandon his claim and absent some showing that the union did not adequately present the claim at hearing, its reticence in pursuing the cause initially is not pertinent. It must be emphasized that the arbitrator's decision of March 13, 1981, was favorable to the plaintiff. Moreover, when the arbitrator's award was not implemented, the union filed suit to enforce the award.

■ The plaintiff points to the fact that there was a delay of perhaps as much as six months in processing his claim. According to the plaintiff, he was told that twelve weeks of that delay was attributable to the union's unpreparedness. The deposition of W.C. Bohling indicates that the union-caused delay could have been as long as six months. This alone will not support a claim for failure to fairly represent. There must be "substantial evidence of fraud, deceitful action or dishonest conduct" in order to prevail against the union. *Motor Coach Employees v. Lockridge,* 403 U.S. 274, 299, 91 S.Ct. 1909, 1924, 29 L.Ed.2d 473 (1970); *see Coe v. United Rubber, Cork, Linoleum and Plastic Workers of America,* 571 F.2d 1349, 1351 (5th Cir. 1978). Mere carelessness, inadvertence, negligence, or poor judgment in processing plaintiff's claim will not support an action against the union. *Coe,* 571 F.2d at 1350–51. Standing alone, the fact that the union's lack of preparation may have caused a delay of six months in

processing the claim does not indicate fraud, deceitful action or dishonest conduct.

Nor does the fact that the union did not seek an injunction when the plaintiff was assigned to work on the kiln show arbitrariness, bad faith, or discriminatory intent. Plaintiff's job assignment involved no loss of pay or seniority. It was in the same department where his former job had been. The plaintiff was offered several jobs during the pendency of the claim that did not involve work on the kiln or reduction of salary. During this time the union was continuing to work toward reinstatement of the plaintiff in his original position. There has been no allegation by the plaintiff that the union would have or had sought injunctive relief for other members in the same or similar circumstances. An injunction is an extreme remedy. The union was pursuing the remedies set out in the collective bargaining agreement. Its failure to seek injunctive relief will not support an action for failure to represent Smith fairly.

It is noted that there is some reference in the record to the delay which occurred in resubmitting plaintiffs' grievance to the arbitrator in connection with the union's action (CV181–96) to enforce the arbitrator's March 13, 1981 award. While the delay was unfortunate and required this Court to enter an order on February 19, 1982, to put a stop to the dilatory behavior of counsel, I cannot conclude that the union's conduct in the enforcement action amounts to a failure to fairly represent the plaintiff. The matter was ultimately referred back to the arbitrator who found in favor of the plaintiff. The arbitrator's second award has been enforced as the judgment of this Court in Civil Action No. 181–96. Although the union may not have been enthusiastic in its pursuit of plaintiff's claim, I cannot characterize the union's conduct as being "arbitrary, discriminatory or in bad faith." *Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967). The union did not ignore plaintiff's grievance or process it in a perfunctory fashion. *Id.* at 191, 87 S.Ct. at 917. Certainly, the record does not contain "substantial evidence of fraud,

deceitful action or dishonest conduct." *Motor Coach Employees v. Lockridge,* 403 U.S. 274, 299, 91 S.Ct. 1909, 1924, 29 L.Ed.2d 473 (1970).

In conclusion, it is noted that this Court has diligently searched for precedent authorizing a plaintiff to sue for a union's failure to represent him fairly in a grievance procedure which ended in the resolution of the grievance in favor of the plaintiff employee. No such precedent has been found. Clearly, it cannot be asserted in this case that union's conduct tainted the decision of the arbitrator. *Cf. Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976) (facts present to support an inference that the arbitrator's decision had been tainted). Regardless of the conduct of the union, the plaintiff was successful in obtaining and enforcing an award which gave him his old job back and compensation for his lost earnings. I conclude as a matter of law that the union did not breach its duty of fair representation to the plaintiff. Plaintiff has received substantial relief through the arbitration process; he is not entitled to further relief.

### III. THE EMPLOYER

As a general rule, "[a]n employee who claims a violation by his employer of the collective bargaining agreement is bound by the terms of that agreement as to the method of enforcing his claim." *Rabalais v. Dresser Industries, Inc.,* 566 F.2d 518, 519 (5th Cir. 1978). In this case, plaintiff submitted his grievance to the arbitration process and has received a favorable award. Plaintiff claims, however, that his remedy under the collective bargaining agreement is inadequate and that Babcock's actions relating to its refusal to implement the arbitrator's first award entitle the plaintiff to recover damages. Plaintiff bases his argument on *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976).

In *Hines* the Supreme Court concluded that a union's breach of its duty of fair representation "relieves the employee of an express or implied requirement that

disputes be settled through contractual grievance procedures; if it seriously undermines the integrity of the arbitral process the union's breach also removes the bar of the finality provisions of the contract." 424 U.S. at 567, 96 S.Ct. at 1058. In this case it has already been decided as a matter of law that the union did not breach its duty of fair representation. In addition, the arbitrator expressly found in his second opinion and award that the employer's actions in failing to implement the arbitrator's first award were not taken in bad faith or in an attempt to discriminate against the plaintiff. I can see no reason, under the facts of this case, to extend the rationale of *Hines* to a situation in which the employee actually obtained relief through the process of arbitration. Congress has endorsed the use of collective bargaining as the best means for formulating dispute settlement mechanisms. The intent of Congress "can be effectuated only if the means chosen by the parties for settlement of their differences under a collective bargaining agreement is given full play." *Steelworkers v. American Manufacturing Co.,* 363 U.S. 564, 566, 80 S.Ct. 1343, 1345, 4 L.Ed.2d 1403 (1960). Arbitration has been successful in this case and this Court will do nothing to undercut that process. Plaintiff is entitled to no further relief. Defendant Babcock is entitled to judgment as a matter of law.

### CONCLUSION

Accordingly, the motions of the defendants for summary judgment are hereby granted. The defendants shall bear the plaintiff's costs. No justification exists in this case for the award of attorney's fees.