FRIO ICE, S.A., Plaintiff–Appellant,

v.

SUNFRUIT, INC., John R. Plana, Jr., Oswaldo P. Rodriguez, Defendants–Appellees.

No. 89–6258.

United States Court of Appeals, Eleventh Circuit.

Nov. 30, 1990.

Stephen P. McCarron, Steven A. Rafkin, Silver Spring, Md., Guy Motzer, Miami, Fla., for plaintiff-appellant.

Ellen R. Hornstein, U.S. Dept. of Agriculture, Washington, D.C., amicus curiae, for plaintiff-appellant.

Howard M. Camerik, Glenn E. Goldstein, Miami, Fla., for defendants-appellees.

Before FAY and JOHNSON, Circuit Judges, and ALLGOOD *, Senior District Judge.

JOHNSON, Circuit Judge:

Plaintiff Frio Ice, S.A. ("the plaintiff") appeals the district court's Memorandum Order holding that the court did not have jurisdiction under the Perishable Agricultural Commodities Act ("PACA") to entertain injunctive actions by private parties to enforce payment from a statutory trust established under Section 5(c) of PACA, 7 U.S.C.A. § 499e(c) (West Supp.1990).

## I. STATEMENT OF THE CASE

### A. *Background Facts*

Congress enacted PACA in 1930 to encourage fair trading practices in the marketing of perishable commodities. H.R. Rep. No. 543, 98th Cong., 2d Sess. 3, *re-*

---

* Honorable Clarence W. Allgood, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation.

*printed in* 1984 U.S.Code Cong. & Admin. News 405, 406. Under PACA, the Secretary of Agriculture ("the Secretary") must license all commission merchants, dealers, and brokers (hereinafter collectively "produce dealers") of perishable agricultural commodities placed in interstate or international commerce. 7 U.S.C.A. § 499c (West 1980). PACA also requires produce dealers to make "full payment promptly" for any produce they purchase. 7 U.S.C.A. § 499b(4) (West Supp.1990).[1]

In the early 1980s, Congress determined that the increase in non-payment and delinquent payment by produce dealers threatened the financial stability of produce growers. Congress was particularly troubled by the practice by which produce dealers granted their lenders security interests in the produce on which they had accepted delivery even though the dealers had not yet paid for these commodities. *See* 7 U.S.C.A. § 499e(c)(1) (West Supp.1990).

In response, Congress amended PACA in 1984 to establish a nonsegregated statutory trust under which a produce dealer holds its produce-related assets as a fiduciary until full payment is made to the produce seller. 7 U.S.C.A. § 499e(c) (West Supp.1990). The trust automatically arises in favor of a produce seller upon delivery of produce. 7 U.S.C.A. § 499e(c)(2) (West Supp.1990). An unpaid seller loses the benefits of the trust unless it files written notice of its intent to preserve its rights with the United States Department of Agriculture and the produce dealer. 7 U.S.C.A. § 499e(c)(3) (West Supp.1990). For produce sellers, a principal benefit of the trust is that they are placed first in line among creditors for all produce-related assets if the produce dealer declares bankruptcy.

During December 1988 and January 1989, the plaintiff supplied nineteen shipments of asparagus to the defendant, Sunfruit, Inc. ("Sunfruit"). The plaintiff served and filed the notices of intent required to preserve its trust benefits. Sunfruit failed to pay for the produce.[2]

### B. *Procedural History*

On June 16, 1989, the plaintiff filed a complaint against Sunfruit, John R. Plana, Jr., and Oswaldo P. Rodriguez to enforce payment of $229,831.13 from the trust.[3] The plaintiff filed a motion for a preliminary injunction requesting that Sunfruit segregate this amount in a court-supervised trust account pending resolution of the suit. The plaintiff also sought a court order requiring Plana and Rodriguez to fund any shortfall not funded by Sunfruit.

On July 7, 1989, after a hearing on the motion, the district court found that the plaintiff was a trust beneficiary of Sunfruit in the amount of $229,831.14. It ordered Sunfruit to segregate that amount in a bank account under court supervision during the pendency of the action. The court withheld its ruling on the plaintiff's motion that it order Plana and Rodriguez to fund the trust to the extent there was any shortfall not funded by Sunfruit until the parties briefed the issue.

On November 6, 1989, the district court, *sua sponte*, vacated its preliminary injunction. *Frio Ice, S.A. v. Sunfruit, Inc.*, 724 F.Supp. 1373 (S.D.Fla.1989). The court concluded that it did not have jurisdiction under Section 499e(c) to entertain injunctive actions by private parties. *Id.* at 1378. It also decided that, even if it had such jurisdiction, it could not order Sunfruit to segregate trust assets through the establishment of a separate trust account under court supervision. *Id.* at 1376–77. The district court subsequently denied the plaintiff's motion to reinstate the injunction pending reconsideration, and this appeal

---

1. The Code of Federal Regulations defines "full payment promptly" as payment within ten days after acceptance of regulated produce, unless the parties execute a specific written agreement to the contrary at the time of the sale. 7 C.F.R. § 46.2(aa) (1990).

2. The parties disagreed over the bill. The plaintiff claimed Sunfruit owed it $229,831.13. Sun-

fruit argued that it only owed $79,460.94 and offered to pay that sum in full and final settlement. The plaintiff rejected this offer.

3. Plana is the president of Sunfruit. Rodriguez is a 35 percent shareholder in Sunfruit and may be an officer. Only Rodriguez submitted an appellee's brief.

followed. On this appeal, we consider the following three issues: (1) whether federal courts have jurisdiction to entertain injunctive actions by trust beneficiaries to prevent dissipation of a trust established pursuant to 7 U.S.C.A. § 499e(c) (West Supp. 1990); (2) if federal courts have such jurisdiction, whether they have the authority to order segregation of the assets in the trust to implement an injunction to prevent dissipation; and (3) assuming federal courts have such jurisdiction, whether the district court is precluded from issuing a preliminary injunction against Rodriguez.

## II. ANALYSIS

■ The interpretation of a statute by a district court is subject to *de novo* review by this Court. *Centel Cable Television Co. of Fla. v. Thos. J. White Development Corp.*, 902 F.2d 905, 908 (11th Cir.1990).

### A. *Jurisdiction Over Injunctive Actions by Private Parties*

■ Absent a clear congressional command to the contrary, federal courts retain their authority to issue injunctive relief in actions over which they have jurisdiction. *Califano v. Yamasaki*, 442 U.S. 682, 705, 99 S.Ct. 2545, 2559, 61 L.Ed.2d 176 (1978); *see also Porter v. Warner Holding Co.*, 328 U.S. 395, 398, 66 S.Ct. 1086, 1089, 90 L.Ed. 1332 (1946) ("Unless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied."); *Huie v. Bowen*, 788 F.2d 698, 704 (11th Cir.1986). This Court resolves any ambiguities in the statute in favor of the interpretation that permits federal courts to exercise fully their traditional equity powers. *Huie*, 788 F.2d at 705 (citing *Hecht Co. v. Bowles*, 321 U.S. 321, 330, 64 S.Ct. 587, 592, 88 L.Ed. 754 (1944)).

■ Section 499e(c)(4) of Title 7 states:
The several district courts of the United States are vested with jurisdiction specifically to entertain (i) actions by trust

beneficiaries to enforce payment from the trust, and (ii) actions by the Secretary to prevent and restrain dissipation of the trust.

7 U.S.C.A. § 499e(c)(4) (West Supp.1990). In analyzing its jurisdictional authority under the statute, the district court stated that jurisdictional provisions of federal statutes are to be strictly construed. *Frio Ice*, 724 F.Supp. at 1378 (citing *Hardin v. City Title & Escrow Co.*, 797 F.2d 1037, 1040 (D.C.Cir.1986); *In re Carter*, 618 F.2d 1093, 1098 (5th Cir.1980)). The district court found that Section 499e(c)(4) granted it jurisdiction to consider injunctive actions only when such actions are brought by the Secretary. *Id.* The court claimed support for this reading based on the statute's language and on its legislative history, which specifically discussed injunctive actions only in relation to actions by the Secretary. *Id.; See* H.R.Rep. No. 543, 98th Cong., 2d Sess. 7, *reprinted in* 1984 U.S.Code Cong. & Admin.News 405, 410.

The plaintiff contends that the district court has read Section 499e(c)(4) erroneously. Specifically, it argues that the district court applied the wrong test to determine whether Congress limited the authority of federal courts to grant injunctive relief to trust beneficiaries. It claims that the proper test focuses on whether the statute or its legislative history clearly states that Congress intended to preclude such relief to private parties.[4]

Contrary to the district court's conclusion, neither Section 499e(c)(4) nor PACA's legislative history directly or inferentially restricts the district court's jurisdiction to entertain injunctive suits by trust beneficiaries. On its face, the statute does not limit a federal court's jurisdiction over actions by private parties. Subsection (i) explicitly grants district courts the jurisdiction to entertain "actions by trust beneficiaries to enforce payment from the trust." 7 U.S.C.A. § 499e(c)(4)(i) (West Supp.1990). Although the statute does not define the term "actions," since the merger of law

---

**4.** The Department of Agriculture, in its brief as *amicus curiae*, argues that the district court

erred for essentially the same reasons.

and equity, there is only one form of action, a civil action. *See* Fed.R.Civ.P. 2. By using the term "actions" without any restrictions, Congress thus intended the federal courts to entertain claims for both legal and equitable relief by trust beneficiaries.[5] Moreover, the language of subsection (ii) does not change this conclusion. Rather, subsection (ii) may be read as simply granting to the Secretary standing to bring Section 499e(c)(4) suits to prevent dissipation of trust assets. Finally, this Court resolves ambiguities in favor of the interpretation that permits federal courts to exercise fully their traditional equity powers. *Huie*, 788 F.2d at 705. Thus, the language of the statute supports the conclusion that the district court has jurisdiction to entertain injunctive actions by private parties.[6]

The district court noted correctly that the legislative history discusses injunctive suits only in relation to actions by the Secretary. The legislative history states that upon discovering that a produce dealer is in financial difficulty, the Secretary, acting on behalf of the trust beneficiaries, should seek an injunction to freeze the trust assets until the Secretary has advised the beneficiaries of the situation, thereby giving them the opportunity to protect their interests. *Id.* at 411. Congress gave this authority to the Secretary in order to protect trust beneficiaries, who frequently cannot protect themselves because they lack the necessary information. *Id.* at 410–11. Thus, when the legislative history is read in its entirety, it is clear that Congress is discussing only how it foresees the Secretary fulfilling his responsibilities under the statute. There is no language in the legislative history that limits the remedies available to trust beneficiaries. *See* H.Rep. No. 543, 98th Cong., 2d Sess. 7, *reprinted in* 1984 U.S.Code Cong. & Admin.News 405, 410.

Neither the statute nor the legislative history contains a clear congressional command limiting the remedies available to private beneficiaries. Accordingly, we find the district court's interpretation of Section 499e(c)(4), as limiting injunctive relief to suits brought by the Secretary, to be incorrect.

**B.** *The District Court's Authority to Order Segregation of Trust Assets*

■ The district court also held that Section 499e(c) did not authorize federal courts to order PACA defendants to create segregated trust accounts in order to enforce payments to trust beneficiaries. *Frio Ice*, 724 F.Supp. at 1376–77. The district court relied on the decisions in *Fresh Western Marketing v. M & L Food Center*, 707 F.Supp. 515, 516 (S.D.Fla.1989); *DeBruyn Produce Co. v. Victory Foods, Inc.*, 674 F.Supp. 1405 (E.D.Mo.1987).

The district court's reliance on *DeBruyn* is mistaken. The *DeBruyn* court adopted

---

**5.** Sunfruit contends that this Court should look to section 198 of the *Restatement (Second) of the Law of Trusts* (1959) to glean Congress' intent to limit trust beneficiaries to legal remedies. Section 198 states that a trust beneficiary "can maintain an action at law ... to enforce payment." Sunfruit argues that by employing the language "to enforce payment" in the statute Congress intended to limit trust beneficiaries to legal remedies. This argument is undercut by the lack of any specific words of limitations in the statute itself. The statute refers to "action" not "action at law." 7 U.S.C.A. § 499e(c)(4) (West Supp.1990). Moreover, comment a to section 198 recognizes that beneficiaries retain equitable remedies against the trustee.

**6.** Sunfruit's claim that the caselaw interpreting jurisdictional grants in other statutes supports the district court's interpretation of Section 499e(c)(4) is not persuasive. These statutes are easily distinguishable from the PACA because they contain either express words of limitation or detailed lists of remedies. For example, in the Rail Passenger Service Act of 1970, 45 U.S.C.A. § 501, *et seq.*, cited by Sunfruit, Congress expressly precluded private employees from bringing suits other than those involving labor agreements and the Supreme Court so held in *National R.R. Passenger Corp. v. National Ass'n of R.R. Passengers*, 414 U.S. 453, 94 S.Ct. 690, 38 L.Ed.2d 646 (1974). Moreover, in the Privacy Act of 1974, 5 U.S.C.A. § 552a(g), also cited by Sunfruit, Congress created a detailed list of remedies for particular violations. This Court found that the Privacy Act limited the remedies available to those listed in Section 552a(g). *See Edison v. Department of the Army*, 672 F.2d 840 (11th Cir.1982). By detailing an explicit list of remedies for specific violations, the Privacy Act is precisely the type of statute that creates "necessary and inescapable inference" that remedies are limited. *See Porter*, 328 U.S. at 398, 66 S.Ct. at 1089.

the wrong test for determining the scope of a federal court's authority to fashion equitable relief. The *DeBruyn* court refused to segregate trust assets into a court-supervised account because it could find no positive grant of authority to do so from either the statute or the legislative history. *Id.* at 1409.[7]

As noted in II(A) *supra*, the proper test for finding restrictions on the equitable powers of federal courts is a clear congressional command to preclude such relief. *Califano*, 442 U.S. at 705, 99 S.Ct. at 2559. No such restriction can be found in the statute or its legislative history. It is true that Congress sought to minimize the burden of the PACA trust on produce dealers. That is why the statute permits a PACA trust to exist as a nonsegregated floating trust that permitted commingling of assets. H.Rep. No. 543, 98th Cong., 2d Sess. 4, *reprinted in* 1984 U.S.Code Cong. & Admin.News 405, 407; *See also* 7 C.F.R. § 46.46(c). At the same time, the central purpose of Section 499e(c) is to ensure payment to trust beneficiaries. Segregation often may be the only means by which a federal court can prevent dissipation. H.Rep. No. 543, 98th Cong., 2d Sess. 4, *reprinted in* 1984 U.S.Code Cong. & Admin.News 405, 407. The legislative history noted that once the trust is dissipated it is almost impossible for a beneficiary to obtain recovery. *Id.* at 411. Congress recognized that dissipation of trust assets would undermine PACA and made such dissipation a violation of the statute. 7 U.S.C.A. § 499b(4) (West Supp.1990). Thus, preventing dissipation of the trust is a key purpose of PACA. Segregation of trust assets is an important tool for achieving that purpose. For these reasons, the district court's finding that it did not have the authority to segregate trust assets is erroneous.

■ In the instant litigation, however, the plaintiff sought only the segregation of sufficient trust funds to cover its claims against Sunfruit. Segregation of only part of the trust solely to accommodate a beneficiary's singular interest is inappropriate because the statutory trust exists for the benefit of all unpaid produce suppliers. *See* 7 U.S.C.A. § 499e(c)(2) (West Supp. 1990). Upon a showing that the trust is being dissipated or threatened with dissipation,[8] a district court should require the PACA debtor to escrow its proceeds from produce sales, identify its receivables, and inventory its assets. It should then require the PACA debtor to separate and maintain these produce-related assets as the PACA trust for the benefit of all unpaid sellers having a bona fide claim. 7 U.S.C.A. § 499e(c)(3). Each beneficiary would then be entitled to its pro rata share.

### C. *Extension of the Preliminary Injunction to Rodriguez*

■ The issuance of a preliminary injunction falls within the sound discretion of the district court. *Cunningham v. Adams*, 808 F.2d 815, 819 (11th Cir.1987). A district court should grant a preliminary injunction only if the moving party clearly shows: (1) a substantial likelihood that it will succeed on the merits; (2) that it will suffer irreparable harm unless the injunction issues; (3) that the potential injury outweighs possible harm to the opposing party; and, (4) that the injunction would not be adverse to the public interest. *Id.*

■ In the proceeding below, the district court vacated its preliminary injunction against Sunfruit and denied the plaintiff's request to extend the injunction to Plana and Rodriguez. Rodriguez argues that even if the district court erred regarding its equity powers, the plaintiff is not entitled to a preliminary injunction against Rodriguez personally. He contends that at the hearing on July 7, 1989, after which the district court issued the injunction, the plaintiff failed to establish likelihood of

---

**7.** The district court in *Fresh Western,* 707 F.Supp. at 515, relied solely on *DeBruyn* without explanation for its holding that it could not order the segregation of trust assets.

**8.** By requiring trust beneficiaries to show the actual dissipation or the threat of dissipation of the PACA trust before ordering segregation, district courts will avoid unduly burdening those produce beneficiaries who have properly maintained the trust.

success on the merits that Rodriguez was personally liable for the trust funds or that he possessed these funds.

Because the district court ruled that it did not have jurisdiction to issue an injunction in the instant case, it made no findings on any of these factors regarding the personal liability of Rodriguez for the trust funds. Accordingly, it would be premature for this Court to determine this issue at this time.

### III. CONCLUSION

For the foregoing reasons, we RE-VERSE the district court's Memorandum Order and REMAND with instructions to determine whether the trust is being dissipated or threatened with dissipation, and, if so, to order Sunfruit to escrow its proceeds from produce sales, identify its receivables, and inventory its assets. These assets should then be segregated into a court-supervised trust account on a pro rata basis to all unpaid sellers having bona fide claims. Finally, we REMAND to the sound discretion of the district court the determination of whether to extend the preliminary injunction to Rodriguez.