222 F.3d 132 (3rd Cir. 2000)
 TANIMURA & ANTLE, INC.; TOM LANGE CO., INC.; CARLSBAD PRODUCE, INC.; TANIMURA DISTRIBUTING, INC.; STEVECO, INC., Appellants
v.
PACKED FRESH PRODUCE, INC.; DAVID W. MENADIER; JOE DUREL, d/b/a J.D. INVESTMENTS
 NO. 00-5056
 UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT
 Argued: May 25, 2000
Filed August 15, 2000
 
 On Appeal From the United States District Court For the District of New Jersey (D.C. Civil No. 00-cv-00279), District Judge: Honorable William H. WallsR. Jason Read, Esq. Bartholomew M. Botta, Esq. RYNN & JANOWSKY 4100 Newport Place Drive Suite 700 Newport Beach, CA 92660 Jeffrey M. Chebot, Esq. [ARGUED] WHITEMAN, BANKES & CHEBOT, Philadelphia, PA, Counsel for Appellants.
 Before: ALITO and RENDELL, Circuit Judges, and DUHE, Senior Circuit Judge*
 OPINION OF THE COURT
 RENDELL, Circuit Judge.
 
 
 1
 At issue in this appeal is whether, and if so, under what circumstances, a district court can grant equitable injunctive relief to a trust beneficiary to prevent dissipation of trust fund assets under the Perishable Agriculture Commodities Act ("PACA"), 7 U.S.C. S 499a et seq. (1998). Appellants, Tanimura & Antle, Inc., Tom Lange Co., Carlsbad Produce, Inc., Tanimura Distributing, Inc., and Stevco Inc., are sellers of perishable agricultural commodities and beneficiaries of a statutory trust provided for by PACA. See 7 U.S.C. S 499e(c). Appellees, Packed Fresh Produce, Inc. and David W. Menadier,[1] are buyers of these perishable agricultural commodities and became statutory trustees under PACA upon purchase of such goods. See id. Appellants sought injunctive relief against Appellees to prevent dissipation of PACA trust assets and, also, against a third defendant, Joe Durel, doing business as J.D. Investments, who allegedly was converting, or already had converted, to his own use and benefit, PACA trust assets rightfully belonging to Appellants.
 
 
 2
 The District Court declined to grant injunctive relief because it believed that Appellants had an adequate remedy at law in a suit for money damages and, further, that injunctive relief was futile when the PACA trust assets were already being depleted. We first conclude that the District Court had jurisdiction to grant private injunctive relief. Second, we hold that equitable relief can issue to aid the rights of sellers who qualify as PACA trust beneficiaries, and because Appellants adequately demonstrated the likelihood of dissipation of trust fund assets and the likelihood of irreparable harm, the District Court should have granted the injunction sought. We will reverse and remand.
 
 I. FACTS
 
 3
 In a series of transactions between November 1999 and early January 2000, Appellants sold and shipped perishable agricultural commodities to Appellees in compliance with Appellees' requests. Appellees accepted and resold these commodities, but failed to pay the accumulated balance of $1,441,447.60 owed to Appellants. In response, Appellants gave proper notice of intent to preserve their rights as beneficiaries to a PACA trust, see 7 U.S.C. S 499e(c)(3), (4), and subsequently sought equitable relief to preserve their rights under PACA and to prevent trust dissipation.
 
 
 4
 Appellants submitted evidence to the District Court of Appellees' dissipation of trust assets and precarious financial position, specifically the Appellees' lack of sufficient cash or other assets to pay for the commodities in full or on time. See District Court Transcript ("Tr.") at 6; Brief for Appellant at 4. Appellees did not appear before the District Court (or file a brief on appeal) and neither they nor the District Court challenged the evidence offered by Appellants regarding the Appellees' trust dissipation and detrimental financial condition. Appellants' evidence includes the following: copies of Appellees' checks to Appellants that were returned for insufficient funds, copies of Appellees' checks that were post-dated as late as March 2000 for already-overdue balances, and affidavits from Appellants' employees responsible for accounts receivable. These affidavits affirmed that Appellees repeatedly admitted an inability to pay the amounts rightly owed to Appellants,[2] that Appellees often promised partial payment or assured Appellants that payment was "in the mail" and either payment was never received or there were insufficient funds to cover the checks, and that Appellees actually made additional purchases from Appellant Tanimura & Antle, Inc. totaling $200,000 despite acknowledging an overdue balance of $400,000.
 
 
 5
 Appellants sought an order to show cause and for temporary restraint or a preliminary injunction to (1) prevent Appellees from further dissipating the PACA trust assets that belonged to Appellants and (2) require Appellees to release or otherwise set aside the PACA trust assets belonging to Appellants pending final adjudication of the complaint on file with the District Court. On appeal, Appellants argue that an injunction should have been issued to prevent dissipation of the PACA trust assets.
 
 II. BACKGROUND
 
 6
 Congress enacted PACA in 1930 to promote fair trading practices in the produce industry. See Idahoan Fresh v. Advantage Produce, Inc., 157 F.3d 197, 199 (3d Cir. 1998). In particular, Congress intended to protect small farmers and growers who were especially vulnerable to the practices of financially irresponsible commission merchants, dealers, and brokers, who we will collectively refer to as "buyers." See 7 U.S.C. S 499a et seq. In its original form, PACA contained two main features designed to protect sellers of perishable agricultural commodities: (1) a requirement that all buyers obtain a license from the Department of Agriculture that was revocable upon a determination that the buyer repeatedly or flagrantly violated prohibitions of unfair conduct and (2) a procedure under which unpaid suppliers could obtain an order from the Department of Agriculture requiring the offending buyer to pay damages to the injured seller. See Andrew M. Campbell, Annotation, Statutory Trust Under Perishable Agricultural Commodities Act, 128 A.L.R. Fed. 303, 316 (1995).
 
 
 7
 Congress examined the sufficiency of the PACA provisions fifty years later and determined that prevalent financing practices in the perishable agricultural commodities industry were placing the industry in jeopardy. Particularly, Congress focused on the increase in the number of buyers who failed to pay, or were dilatory in paying, their suppliers, and the impact of such payment practices on small suppliers who could not withstand a significant loss or delay in receipt of monies owed. See H.R. Rep. No. 98-543, at 3 (1983), reprinted in 1984 U.S.C.C.A.N. 405, 406; see also In re W.L. Bradley, 78 B.R. 92, 93 (Bankr. E.D. Pa. 1987). Also, Congress was troubled by the common practice of produce buyers granting liens on their inventories to their lenders, which covered all proceeds and receivables from sales of perishable agricultural commodities, while the produce suppliers remained unpaid. See H.R. Rep. No. 98-543, at 3 (1983), reprinted in 1984 U.S.C.C.A.N. 405, 406. This practice elevated the lenders to a secured creditor position in the case of the buyers' insolvency, while the sellers of perishable agricultural commodities remained unsecured creditors with little legal protection or means of recovery in a suit for damages. See id.
 
 
 8
 Deeming this situation a "burden on commerce," Congress amended PACA in 1984 to include a statutory trust provision, 7 U.S.C. S 499e(c), which provides an additional seller's remedy, or safeguard,through increased credit security in the absence of prompt payment for perishable agricultural commodities.[3] See id. S 499e(c)(2). Under the 1984 amendment, perishable agricultural commodities, inventories of food or other derivative products, and any receivables or proceeds from the sale of such commodities or products, are to be held in a non- segregated floating trust for the benefit of unpaid sellers. See 7 U.S.C. S 499e(c); 7 C.F.R. S 46.46(b). This trust is created by operation of law upon the purchase of such goods, and the produce buyer is the statutory trustee. See 7 U.S.C. S 499e(c)(3). To protect the assets of the trust, the unpaid supplier must give the trustee written notice of intent to preserve the trust within thirty calendar days after payment was due. See id. Alternatively, the unpaid seller may provide notice of intent through its ordinary and usual billing or invoice statements. See id. S 499e(c)(4).[4]
 
 
 9
 PACA contains both a general remedial provision dating back to its 1930 enactment and a specific jurisdictional provision added as part of the 1984 amendment. Specifically, the original remedial provision, which remains intact today, states that liability under PACA may be enforced by:
 
 
 10
 (1) complaint to the Secretary of Agriculture as provided by the remainder of the statute, or (2) by suit in any court of competent jurisdiction; but this section shall not in any way abridge or alter the remedies now [on June 10, 1930] existing at common law or by statute, and the provisions of this Act [7 U.S.C. S 499 et seq.] are in addition to such remedies.
 
 
 11
 Id. S 499e(b). When Congress adopted the concept of the statutory trust itself and considered its implications, it included in the trust provisions certain additional remedial language:
 
 
 12
 The several district courts of the United States are vested with jurisdiction specifically to entertain (i) actions by trust beneficiaries to enforce payment from the trust, and (ii) actions by the Secretary to prevent and restrain dissipation of the trust.
 
 
 13
 Id. S 499e(c)(5).
 
 
 14
 Appellants filed a complaint in the District Court to enforce their right to payment under the statutory provisions and sought a temporary restraining order or preliminary injunction to prevent further dissipation of trust assets. The District Court held a hearing at which it inquired into the need for equitable relief and expressed its view that Appellants were only seeking money and, accordingly, may have an adequate remedy at law. The Court also questioned whether the Appellants could benefit from enjoining further dissipation of trust assets when the assets were already being depleted. In light of its own reading and application of the decision in Driscoll Potatoes, Inc. v. N.A. Produce Co., 765 F. Supp. 174 (D.N.J. 1991), the District Court reasoned that an adequate remedy at law existed because Appellants were seeking money damages and, therefore, the District Court denied equitable relief.
 
 
 15
 We conclude, as further explained below, that the District Court had jurisdiction pursuant to 7 U.S.C. S 499e(c)(5). We have jurisdiction over this appeal pursuant to 28 U.S.C. S 1292(a)(1). Our standard of review of a district court's denial of injunctive relief requires us to determine whether the District Court erred in applying the law, made a clear mistake in considering the proof, or abused its discretion. See Campbell Soup Co. v. Conagra, Inc., 977 F.2d 86, 91 (3d Cir. 1992); Frank's GMC Truck Center, Inc. v. General Motors Corp., 847 F.2d 100, 101 (3d Cir. 1988). We exercise de novo review of the District Court's interpretation of statutes and regulations. See Idahoan Fresh, 157 F.3d at 197. Our focus in this appeal is twofold. First, we must examine our jurisdiction, specifically determining whether district courts have jurisdiction over private injunctive actions seeking to prevent dissipation of PACA trust assets. Second, we will examine whether the District Court erred in applying the law to the facts before it.
 
 III. DISCUSSION
 
 16
 We first address an issue not specifically presented to the District Court, but one which we are compelled to examine nonetheless, namely, the jurisdiction of the District Court over the injunction motion brought by Appellants. This issue arises due to the uncertainty expressed in recent cases as to the meaning of the remedial "jurisdiction" language added to PACA with the statutory trust provision: does the specific grant of jurisdiction to the district courts to enable the Secretary to seek an injunction to prevent the dissipation of trust assets mean that only the Secretary of Agriculture can do so? At least one Circuit Court of Appeals has addressed this issue and concluded that S 499e(c)(5) does permit district courts to entertain actions for injunctive relief by produce sellers to restrain dissipation of PACA trust assets. See Frio Ice, S.A. v. Sunfruit, Inc., 918 F.2d 154, 158 (11th Cir. 1990). In Frio Ice, the district court had denied the plaintiff 's request for injunctive relief to compel the defendant to segregate funds because the court believed that the statute's specific reference to the Secretary of Agriculture meant that the court lacked jurisdiction to entertain injunctive actions by private parties under PACA.[5] See id. at 156. However, the Court of Appeals for the Eleventh Circuit reversed, reasoning that PACA's statutory language and legislative history did not reflect a desire to preclude jurisdiction over such actions, but, rather, supported private injunctive relief in an effort to advance the statute's purpose. See id. at 157-58.
 
 
 17
 By contrast, the United States District Court for the District of New Jersey adopted the opposite view on the issue. See Driscoll Potatoes, Inc. v. N.A. Produce Co., 765 F. Supp. 174, 179 (D.N.J. 1991). In Driscoll Potatoes, the plaintiffs were denied injunctive relief requesting segregation of trust assets to prevent alleged trust dissipation, in part, because the court believed that Congress, in contemplation of the dissipation of trust assets, had "expressly vested the Secretary of Agriculture with the obligation to prevent dissipation of trust assets."[6] Id. at 179. Thus, the court reasoned, district courts could not hear, or, alternatively, private trust beneficiaries could not bring, requests for equitable relief under PACA unless they were brought by the Secretary of Agriculture on behalf of the trust beneficiaries. See id.
 
 
 18
 We conclude that the expansive reading of the statute in Frio Ice has more to commend it. Both the language of the statute, and the policy behind it, support this view. We note that PACA has always contained a broad remedial statement, cited above, specifying the preservation of rights and remedies available at common law. See 7 U.S.C. S 499e(b). When Congress amended PACA in 1984, it did not disturb this fifty-four year old statutory provision, although it obviously could have done so. Furthermore, this section is not contradicted or superseded by S 499e(c)(5), which, by its terms, does not even speak to permissible remedies, as such. Instead, S 499e(c)(5) establishes "jurisdiction" in the district courts for two specific types of actions: (1) actions by the trust fund beneficiaries to enforce payment from the PACA trust and (2) actions by the Secretary of Agriculture to prevent dissipation of trust assets. See id. S 499e(c)(5). Thus, district courts clearly have jurisdiction over actions by private parties seeking to enforce payment from the trust. The prohibition of private injunctive actions in aid of trust beneficiaries' ability to carry out this enforcement provision would destroy remedies at common law, and, therefore, explicitly override the statutory mandate of S 499e(b).
 
 
 19
 Further, we read S 499e(c)(5)(ii) to expand, rather than to restrict, PACA jurisdiction in the district courts. This provision authorizes the district court to entertain, and grants standing to the Secretary of Agriculture to pursue, injunctive relief on behalf of trust beneficiaries, thereby adding to, instead of detracting from, available common law remedies. See Frio Ice, 918 F.2d at 158 (concluding that PACA's legislative history, when read in its entirety, illustrates that Congress, in S 499e(c)(5)(ii), was concerned with how the Secretary would fulfill his responsibilities under the statute).
 
 
 20
 To interpret the statute to so limit the district court's jurisdiction over private injunctive actions would nullify the goal of the PACA trust and ignore Congress's intent. Because PACA is remedial legislation, it should be construed broadly to effectuate its purpose. See Idahoan Fresh v. Advantage Produce, Inc., 157 F.3d 197, 202 (3d Cir. 1998). PACA's purpose, as Congress has crystallized, is to ensure payment to the unpaid seller in the perishable agricultural commodities industry. See 7 U.S.C. S 499e(c); Frio Ice, 918 F.2d at 159. The very amendment that contains the language in question was passed by Congress to explicitly provide a mechanism to prevent a supplier from remaining unpaid, and to provide the PACA trust as a safety net for the at-risk supplier. If PACA's trust is to have any meaning, and Congress's intent is to be effectuated in any way, trust assets must be preserved and not dissipated. If not for the preservation of trust assets through injunctive relief pending the outcome of litigation, the creation and maintenance of a trust by a spendthrift debtor will be a futile act indeed. We will not read the plain language of the statute to bring about this absurd result. See Idahoan Fresh, 157 F.3d at 202.
 
 
 21
 Nor will we depart from our familiar maxim that"[a]bsent a clear congressional command to the contrary, federal courts retain their authority to issue injunctive relief in actions over which they have jurisdiction." Frio Ice, 918 F.2d at 157 (citing Califano v. Yamasaki, 442 U.S. 682, 705 (1978)). Our reasoning is also supported by one of our sister circuits addressing the availability of private injunctive relief. In JSG Trading Corp. v. Tray-Wrap, Inc., 917 F.2d 75 (2d Cir. 1990), the Court of Appeals for the Second Circuit, although not speaking to the precise issue before us, noted that "nothing in the Act that would prohibit the court from exercising its traditional equity powers to grant a preliminary injunction at the instance of a private litigant if the normal standards for such relief are met." Id. at 79.
 
 
 22
 We next turn to the merits of the District Court's decision to deny Appellants equitable injunctive relief, including the District Court's extensive reliance on Driscoll Potatoes, Inc. v. N.A. Produce Co., 765 F. Supp. 174 (D.N.J. 1991). The District Court based its ruling, in large measure, on its view that Appellants were not entitled to equitable relief because they had an adequate remedy at law. In reaching this conclusion, the Court reasoned that dissipation of trust assets does not make monetary relief inadequate because the sellers are essentially seeking monetary payment. See Tr. at 6, 7, 9. Applying this reasoning to Appellants' claim, the Court found that Appellants could bring suit to enforce payment of the monies due and, according to its reading of the Driscoll Potatoes opinion, no equitable relief was available in this context when such a legal remedy existed. See id. However, the District Court erred in its findings because it (1) failed to recognize that the dissipation of PACA trust assets can render money damages inadequate, thereby necessitating equitable relief, especially when the dissipation will clearly result in the debtor's inability ultimately to make payment, and (2) incorrectly applied the reasoning of Driscoll Potatoes to a very different factual setting, since Appellants presented convincing evidence of both trust dissipation and the buyers' inability ultimately to make payment. We conclude that an adequate remedy at law does not exist, and that injunctive relief to prevent dissipation of PACA trust assets may issue, when it is shown that the trust is being depleted and the likelihood is great that there will be no funds available to satisfy a legal judgment against the delinquent buyer.
 
 
 23
 The District Court failed to recognize that Appellants presented proof radically different from the plaintiff 's proof in Driscoll Potatoes. In Driscoll Potatoes, the plaintiff sought a preliminary injunction directing the segregation of PACA trust assets into an interest-bearing account because the defendants owed the plaintiffs $11,068.50 and plaintiffs had alleged that the defendants were dissipating trust assets by using them to pay other creditors and suppliers. See 765 F. Supp. at 176. However, the Driscoll court denied injunctive relief on the merits because: (1) there was no indication that the defendant was financially unstable and, as a result, the plaintiffs had an adequate remedy at law, for they could recover all amounts owed in a suit for money damages and (2) the plaintiffs failed to make a showing of either dissipation of trust assets or the debtor's general financial instability, which, the Court noted, were alternative factors present in all cases granting injunctive relief in the form of segregation of assets. See id. at 177, 179. However, in comparison with the plaintiffs in Driscoll Potatoes, Appellants present facts probative of both the dissipation of trust assets and the general financial instability of the debtor such that the reasoning in Driscoll Potatoes does not inform the analysis here.
 
 
 24
 Further, the Court's determination that money damages would suffice ignored Appellants' proofs of both the Appellees' trust dissipation and their financial instability. Courts have recognized that once the PACA trust is dissipated, it is almost impossible for a beneficiary to obtain recovery. See Frio Ice, 918 F.2d at 159 (citing H.R. Rep. No. 98-543, at 4 (1983), reprinted in 1984 U.S.C.C.A.N. 405, 411). Thus, the prevention of trust dissipation becomes essential to any meaningful remedy at all. See id. at 159 (stating that "preventing dissipation of the trust is the key purpose of PACA").
 
 
 25
 Although it is difficult to determine from the transcript of the District Court hearing, there may have been some confusion on the part of the Court as to the extent of trust dissipation. See Tr. at 8. The Court seemed to equate "dissipation" with "effectively gone." However, counsel clearly stated that the purpose of the injunction would be to prevent further dissipation and, presuming the existence of remaining trust assets, we conclude that this is proper use of injunctive relief in a situation such as this, even if the dissipation has commenced, but is still ongoing.
 
 
 26
 Additionally, the District Court's analysis did not reflect an appreciation of the PACA trust's non-monetary attributes, and misconstrued the significance of the trust itself. The Court viewed the situation as comparable to that of creditors in pursuit of a financial "deadbeat" in a breach of contract situation. See Tr. at 5. However, in doing so, the District Court disregarded the manner in which the PACA trust "alters the terrain substantially." Continental Fruit Co. v. Thomas J. Gatziolis & Co., 774 F. Supp. 449, 453 (N.D. Ill. 1991) (stating that an argument that only monetary damages were at stake in an action to enjoin trust dissipation might be persuasive in the absence of the PACA statute). Congress specifically singled out the potential harm to unpaid sellers in the perishable agricultural commodities industry for special protection under PACA such that no unpaid supplier with perfected rights should be relegated to seek money damages only, especially when dealing with a financially unstable debtor who is dissipating trust assets.
 
 
 27
 In order to determine whether we should vacate the District Court order or reverse it outright, we must address whether the other necessary elements for the issuance of a preliminary injunction are present on the record before us. See Fed. R. Civ. P. 65. The usual requirements for injunctive relief should apply to injunctions sought in aid of PACA. See JSG Trading, 917 F.2d at 79. Four factors must be considered by a court in deciding whether to issue a preliminary injunction:
 
 
 28
 (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting the preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest.
 
 
 29
 Council of Alternative Political Parties v. Hooks, 121 F.3d 876, 879 (3d Cir. 1997) (quoting American Civil Liberties Union v. Black Horse Pike Reg'l Bd. of Educ., 84 F.3d 1471, 1477 n.2 (3d Cir. 1996) (en banc)). A court should endeavor to balance these factors when determining if an injunction should issue. See Allegheny Energy, Inc. v. DQE, Inc., 171 F.3d 153, 158 (3d Cir. 1999).
 
 
 30
 We conclude that a preliminary injunction should issue here because the four factors required to grant a preliminary injunction are apparent on the record before us. See, e.g., Council of Alternative Political Parties, 121 F.3d 876 (reversing the district court's denial of preliminary injunctive relief and entering an order directing the district court to issue such relief because all four required factors favored granting the injunction); accord Polaroid Corp. v. Disney, 862 F.2d 987 (3d Cir. 1988); Motel 6, Inc. v. Pfile, 718 F.2d 80 (3d Cir. 1983); SEC v. Bonastia, 614 F.2d 908 (3d Cir. 1980). Appellants have a high probability of success on the merits in a suit to enforce payment, for they have sufficiently demonstrated their entitlement to payment and their status as trust beneficiaries with perfected rights. We do not see how granting a preliminary injunction under these circumstances will result in greater harm to Appellees than Appellants, given that Appellees are already financially insolvent and, yet, owe Appellants close to $1.5 million dollars. Further, we find that issuance of a preliminary injunction here is in the public interest, as the statutory purpose explicitly encapsulates this.[7] See 7 U.S.C. S 499(c)(1).
 
 
 31
 We also find that PACA trust dissipation in this case constitutes irreparable harm. Although the District court did not reach this prong specifically, we note that Appellants suffered irreparable injury when the trust was depleted and payment was not readily forthcoming or available. See, e.g., Goadby v. Philadelphia Elec. Co., 639 F.2d 117, 120 (3d Cir. 1981) (explaining, in a non-PACA case, that when determining whether to grant injunctive relief, irreparable harm exists when monetary damages are difficult to ascertain or are inadequate). We agree with the federal courts, including a number of district courts in this circuit, that have held that trust dissipation can satisfy this factor if, absent such relief, ultimate recovery is rendered unlikely. See Continental Fruit Co., 774 F. Supp. at 453 (finding irreparable harm because, absent injunctive action, potential trust dissipation would contravene PACA and permanently injure the trust beneficiary when the trustee had limited assets); Gullo Produce Co. v. A.C. Jordan Produce Co., 751 F. Supp. 64, 67 (W.D. Pa. 1990) (concluding that plaintiffs "have suffered and will continue to suffer immediate and irreparable harm if the defendant is not restrained from using or otherwise dissipating the trust assets" when the defendant's insolvency precluded recovery); DeBruyn Produce Co. v. Olympia Produce Co., 734 F. Supp. 483, 485-86 (N.D. Ga. 1989) (granting injunctive relief in the form of a segregated trust because the plaintiff, in light of the defendant's troublesome financial situation, would suffer irreparable harm if unable to collect its receivables);[8] cf. JSG Trading, 917 F.2d 75, 80 (denying injunctive relief because plaintiff was unlikely to suffer irreparable harm absent a showing that defendant, despite trust dissipation, would be unable to satisfy its financial obligations to plaintiff).
 
 IV. CONCLUSION
 
 32
 Accordingly, because we find that Appellants do not have an adequate remedy at law, and because we find that the four factors required to issue a preliminary injunction favor granting such relief, we will reverse the District Court order and direct the District Court to enter a preliminary injunction, forthwith, preventing Appellees from dissipating trust assets wherever located.
 
 
 
 NOTES:
 
 
 *
 The Honorable John M. Duhe, Jr., United States Court of Appeals Judge for the Fifth Circuit, sitting by designation.
 
 
 [1]
 According to Appellants' initial complaint, David W. Menadier is the sole shareholder and President of Packed Fresh Produce, Inc. See Appendix to Brief for Appellant, vol. II, at 190.
 
 
 [2]
 Statements similar to the following were contained in all of Appellants' affidavits: "Mr. Menadier admitted to me that the amounts due as alleged herein were due and owing TDI. Despite such admissions, [he] told me that he did not have sufficient cash with which to fully and timely pay the balance due." Appendix at 39 (containing affidavit of Raymond O. Gomes, Accounts Receivable Manager for Tanimura Distributing, Inc.).
 
 
 [3]
 The 1984 amendment to PACA says in relevant part:
 It is hereby found that a burden on commerce in perishable agricultural commodities is caused by financing arrangements under which commission merchants, dealers, or brokers, who have not made payment for perishable agricultural commodities purchased, contracted to be purchased, or otherwise handled by them on behalf of another person, encumber or give lenders a security interest in, such commodities, or on inventories of food or other products derived from such commodities, and any receivables or proceeds from the sale of such commodities or products, and that such arrangements are contrary to public interest. This subsection is intended to remedy such burden on commerce in perishable agricultural commodities and to protect the public interest. 7 U.S.C. S 499e(c)(1).
 
 
 [4]
 This provision was added in 1995. The only other 1995 change that is relevant to the case before us is the numeric change of the statute's jurisdictional provision from S 499e(c)(4) to S 499e(c)(5). See Pub. L. No. 104-48 S 6, 109 Stat. 424 (1995).
 
 
 [5]
 The district court had initially granted the preliminary injunction, but subsequently vacated the injunction sua sponte based on its concern as to its jurisdiction. See Frio Ice, 918 F.2d at 156.
 
 
 [6]
 Although the plaintiffs in Driscoll Potatoes specifically sought segregation of trust assets as a form of injunctive relief, the court's overall conclusion with respect to its jurisdiction covered injunctive efforts, generally, to prevent the dissipation of assets. See 765 F. Supp. at 179.
 
 
 [7]
 Specifically, PACA states that "[t]his subsection [S 499e(c)] is intended to remedy such burden on commerce in perishable agricultural commodities and to protect the public interest." 7 U.S.C. S 499e(c)(1).
 
 
 [8]
 We also note that many unpublished district court decisions in our Circuit have raised and resolved this issue consistent with our reasoning. See, e.g., Botman Int'l, B.V. v. International Imports, Inc., No. 99-5088, 1999 WL 997752, at *2 (E.D. Pa. Nov. 4, 1999) (ordering a preliminary injunction to prevent irreparable harm to the plaintiff where the defendant corporation was financially unstable, could offer no credible explanation as to why it had less money than it owed, and was likely to further dissipate PACA trust assets); Zas Int'l Agric., B.V. v. Zas USA, Inc., No. 98-4073, 1998 WL 469958, at *3 (E.D. Pa. Aug. 7, 1998) (denying plaintiff 's request for an ex parte temporary restraining order because, due to the nature of such a request, the Court was unwilling to close down, effectively, the defendants' businesses and endanger existing trust assets absent a specific showing that the assets were actually threatened with dissipation); Six L's Packing Co. v. Arter, No. 88-1998, 1991 WL 4400, at *5 (E.D. Pa. Jan. 6, 1991) (discussing the prior history of the case in which the District Court had granted, and the Court of Appeals for the Third Circuit had affirmed, a preliminary injunction to prevent trust dissipation before the Defendant filed for bankruptcy and then the District Court reaffirmed the injunction after the Defendant filed because of the Defendant's obvious inability to satisfy its financial obligations to the seller).