**BAIARDI FOOD CHAIN, Petitioner**

v.

**UNITED STATES of America; United States Department of Agriculture the Secretary of Agriculture, Respondents.**

No. 06–1124.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Jan. 19, 2007.

Filed March 2, 2007.

Kevin P. Claffey, Gentile & Dickler, New York, NY, Attorney for Petitioner.

Stephen M. Reilly, United States Department of Agriculture, Office of General Counsel, Washington, DC, Attorney for Respondents.

Before SLOVITER, RENDELL, and CUDAHY,* Circuit Judges.

SLOVITER, Circuit Judge.

At issue in this petition for review is whether post-default agreements, entered into by a company licensed under the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. §§ 499a–499s, and its produce suppliers, which set the payment for the produce at an amount lower than the invoice price, bar the United States Department of Agriculture ("USDA") from enforcing the prompt payment provisions of the PACA. Baiardi Chain Food Corp. ("Baiardi")[1] appeals the final order of the Secretary of the USDA, entered on September 2, 2005, which found Baiardi in violation of section 2(4) of the PACA, 7 U.S.C. § 499b(4), for failure to fully and promptly pay its suppliers of perishable agricultural commodities. The Secretary sanctioned Baiardi by ordering publication of the facts and circumstances of Baiardi's violations. We will affirm the decision of the Secretary and deny the petition for review.

## I.

The material facts of this case are not in dispute. The Agricultural Marketing Service of the USDA initiated an investigation of Baiardi after receiving several complaints between October 2000 and January 2001 from suppliers seeking reparation for unpaid produce shipments. In January 2001, Carolyn Shelby, a PACA marketing specialist with the USDA, conducted an investigation of Baiardi's business practices and met with David Axelrod, the owner of the corporation. Axelrod provided Shelby with hundreds of unpaid invoices. The invoices revealed that Baiardi failed to make full payment promptly for 343 lots of perishable agricultural commodities from sixty-seven sellers, amounting to a debt owed of $830,728.39.

In January 2001, Baiardi notified its sellers (in most instances the producers of the agricultural products) that it was going out of business. Baiardi negotiated work-out agreements with several of the sixty-seven producers to whom Baiardi owed payment. Pursuant to those work-out agreements, the produce sellers accepted payment of approximately fifty cents on the dollar for the money Baiardi owed. The producers were willing to resolve Baiardi's indebtedness quickly because, due to Baiardi's impending demise, several companies feared they would receive none of the money they were owed if they chose not to settle. At least two other accounts were settled through court dispositions.

On August 2, 2001, the Associate Deputy Administrator, Fruit and Vegetable Programs, Agricultural Marketing Service of the USDA issued a complaint charging Baiardi with violating section 2(4) of the PACA. On October 16, 2001, Baiardi filed an answer denying the allegations in the complaint. Chief Administrative Law Judge (ALJ) Marc R. Hillson conducted a hearing in New York on February 2, 2004 and May 25, 2004, during which the agency called four witnesses and entered seventy-six exhibits into evidence. Baiardi called no witnesses but entered fifty-five exhibits

---

* Hon. Richard D. Cudahy, United States Senior Circuit Judge for the United States Court of Appeals for the Seventh Circuit, sitting by designation.

1. Baiardi was licensed under the PACA from June 8, 1948 until its license terminated when it failed to pay the annual PACA renewal fee on June 8, 2001.

into evidence through cross-examination of the agency's witnesses.

On April 8, 2005, the ALJ issued his decision and order, finding that Baiardi, from March 2000 through January 2001, failed to make full payment promptly for 343 lots of perishable agricultural commodities from sixty-seven producers in violation of section 2(4) of the PACA. On July 27, 2005, Baiardi appealed the ALJ Decision to the Secretary of the Department of Agriculture. On September 2, 2005, the Judicial Officer ("JO"), acting for the Secretary, affirmed the ALJ's decision and ordered that the facts and circumstances of Baiardi's violations be published, pursuant to the Secretary's authority under 7 U.S.C. § 499h(a). That section provides that if the buyer has "violated any of the provisions of [section 2 of the PACA, including 2(4)] ... the Secretary may publish the facts and circumstances of such violation and/or, by order, suspend the license of such offender for a period not to exceed ninety days, except that, if the violation is flagrant or repeated, the Secretary may, by order, revoke, the license of the offender." *Id.* Because Baiardi had failed to pay its license renewal fee, its PACA license terminated in June 2001; as such, the only sanction open to the Secretary was the publication of the facts and circumstances of the case. Baiardi filed a motion for reconsideration which the JO denied. Baiardi filed a timely petition for review with this Court.

## II.

This Court has jurisdiction to review the Secretary's final order pursuant to 28 U.S.C. § 2342. Judicial review of the decision of an administrative agency is narrowly confined. Pursuant to the Administrative Procedure Act, this Court reviews final decisions by the Secretary of Agriculture under a deferential standard. 5 U.S.C. § 706 states, in pertinent part:

> To the extent necessary to decision and when presented, the reviewing court shall....
>
> (2) hold unlawful and set aside agency action, findings, and conclusions found to be—
>
>> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right....

This applies in full force to judicial review of sanctions imposed under the PACA. *Wayne Cusimano, Inc. v. Block,* 692 F.2d 1025, 1030 (5th Cir.1982). "The choice of sanctions imposed by the Secretary of Agriculture, through [the] Judicial Officer, may not be overturned in the absence of a patent abuse of discretion." *American Fruit Purveyors, Inc. v. United States,* 630 F.2d 370, 374 (5th Cir.1980).

Congress enacted the PACA in 1930 to promote fair trading practices in the produce industry. *See Tanimura & Antle, Inc. v. Packed Fresh Produce, Inc.,* 222 F.3d 132, 135 (3d Cir.2000) (citing *Idahoan Fresh v. Advantage Produce, Inc.,* 157 F.3d 197, 199 (3d Cir.1998)). Under the PACA, every dealer of perishable agricultural commodities is required to be licensed by the Secretary of Agriculture. *Id.; see also Allred's Produce v. United States Dep't of Agriculture,* 178 F.3d 743, 745 (5th Cir.1999) (citing 7 U.S.C. § 499c(a)). "Congress intended to protect small farmers and growers who were especially vulnerable to the practices of financially irresponsible ... 'buyers.'" *Tanimura,* 222 F.3d at 135; *see also Idahoan Fresh,* 157 F.3d at 199.

Under the PACA, it is unlawful for buyers of produce to fail to make prompt

payment for a shipment of produce. Section 2(4) of the PACA states:

> It shall be unlawful in or in connection with any transaction in interstate or foreign commerce:
>
>> (4) For any commission merchant, dealer, or broker to make, for a fraudulent purpose, any false or misleading statement in connection with any transaction involving any perishable agricultural commodity which is received in interstate or foreign commerce by such commission merchant, or bought or sold, or contracted to be bought, sold, or consigned, in such commerce by such dealer, or the purchase or sale of which in such commerce is negotiated by such broker; or to fail or refuse truly and correctly to account and *make full payment promptly* in respect of any transaction in any such commodity to the person with whom such transaction is had. . . .

7 U.S.C. § 499b(4) (emphasis added).

A buyer's failure to tender prompt payment triggers civil liability and the possible revocation of the buyer's PACA license which is required by 7 U.S.C. § 499c. The PACA is "admittedly and intentionally a 'tough' law." S.Rep. No. 84–2507 (1956), *as reprinted in* 1956 U.S.C.C.A.N. 3699, 3701, which

> is designed to protect the producers of perishable agricultural products who in many instances must send their products to a buyer or commission merchant who is thousands of miles away. It was enacted to provide a measure of control over a branch of industry which is almost exclusively interstate commerce, is highly competitive, and presents many opportunities for sharp practice and irresponsible business conduct.

*Zwick v. Freeman*, 373 F.2d 110, 116 (2d Cir.1967) (citing H.R.Rep. No. 84–1196 (1955), *as reprinted* in 1956 U.S.C.C.A.N. 3701, 3701).

Congress amended the PACA in 1984 to add a section providing for a statutory trust to benefit unpaid suppliers of fresh produce. 7 U.S.C. § 499e(c). The statutory trust provision was created in response to congressional concern over the "increase in the number of buyers who failed to pay, or were dilatory in paying, their suppliers, and the impact of such payment practices on small suppliers who could not withstand a significant loss or delay in receipt of monies owed." *Tanimura*, 222 F.3d at 134–35 (holding that because sellers who qualified as PACA trust beneficiaries "demonstrated the likelihood of dissipation of trust fund assets and the likelihood of irreparable harm, the District Court should have granted the injunction sought.")

The trust consists of the perishable agricultural commodities received, all inventories of food or other products derived from the perishable commodities received, and any receivables or proceeds from the sale of such commodities or products. The trust holds all proceeds and receivables from the sale of produce by a dealer until the dealer pays the seller the full purchase price. 7 U.S.C. § 499e(c). The trust thus provides an additional remedy for sellers against a buyer failing to make prompt payment. *Idahoan Fresh*, 157 F.3d at 199 (citing H.R.Rep. No. 98–543, at 2 (1983), *as reprinted in* 1984 U.S.C.C.A.N. 405, 406). "Prior to this amendment, unpaid produce suppliers were unsecured creditors vulnerable to the buyers' practice of granting other creditors a security interest in their inventory and accounts receivable." *Id.* (citing *Tom Lange Co. v. Lombardo Fruit & Produce Co. (In re Lombardo Fruit & Produce Co.)*, 12 F.3d 806, 808–09 (8th Cir.1994)).

Section 2 of the PACA imposes several strict requirements on regulated buyers and sellers. As stated above, section 2(4) mandates that all regulated parties "make full payment promptly" for all produce purchases. 7 U.S.C. § 499b(4). By regulation promulgated by the Secretary of Agriculture, "full payment promptly" requires that produce buyers make payment within ten days of the date on which the produce is accepted, unless otherwise expressly agreed in writing by the parties to the sale prior to the time of the transaction. 7 C.F.R. §§ 46.2(aa)(5), (11). Regulated parties must adhere to the "full payment promptly" provisions of the PACA to keep the transaction under the provisions of the trust. However, the regulations permit the parties to agree in writing before the transaction to other payment periods that do not exceed thirty days and still remain under the trust. 7 C.F.R. § 46.46(e)(2).

The protection of the trust is forfeited by an agreement between the parties for payment that exceeds thirty days. *See, e.g., American Banana v. Republic Nat'l Bank of N.Y., N.A.,* 362 F.3d 33, 47 (2d Cir.2004) (stating that sellers who agree to payment periods exceeding thirty days forfeit trust protection). The issue before us is whether such agreements have any effect on the Secretary's authority to penalize violations of the section 2 of the PACA pursuant to 7 U.S.C. 499h(a).

■ Baiardi asserts that the "full payment promptly" requirement found in section 2(4) of the PACA is not applicable to transactions in which the produce buyer and seller agree to an amount owed below the invoice price. It is undisputed that Baiardi and certain of its produce sellers agreed to a payment plan that amounted to approximately fifty cents on the dollar for every dollar owed. The parties also agreed to extend the payment period beyond the thirty-days set forth in the regulations. 7 C.F.R. § 46.2(aa)(5). In fact, Baiardi often made final payment of the reduced agreed-upon amount considerably beyond the thirty-day period.

The Courts of Appeals have consistently agreed with the Secretary's position that, absent a written agreement prior to the transaction, "full payment promptly" is payment of the entire invoice within ten days of acceptance of the produce. In *Allred's Produce,* the Court of Appeals for the Fifth Circuit affirmed the JO's decision revoking petitioner's PACA license for failing to make full payment promptly to nineteen sellers for eighty-six lots of perishable agricultural commodities worth $336,153.40. In so holding, the Court stated, " 'full payment promptly' means payment within 10 days of the date on which the produce is accepted, or payment within the time specified in writing by prior agreement of the parties." *Allred's Produce,* 178 F.3d at 747. In *Havana Potatoes Corp. v. United States,* 136 F.3d 89, 91–92 (2d Cir.1997), the Court of Appeals for the Second Circuit relied primarily on past-due invoices found in petitioner's files, which provided the USDA with evidence that over $1.9 million was owed to produce suppliers. Although the debts were eventually paid, they were settled after the PACA-specified dates, representing a violation under PACA. *Id.*

Baiardi has not provided any evidence that it entered into written agreements with any of its suppliers prior to the transactions. From the record, it appears that Baiardi, after defaulting on its payment, told its suppliers it was going out of business, and then settled some of its outstanding debts via work-out agreements.

In *American Banana,* 362 F.3d at 45–46, the Court of Appeals for the Second Circuit held that a post-default agreement between a seller of perishable agricultural

commodities and a dealer, which extends the dealer's time for payment beyond thirty days, will result in a loss of the seller's PACA trust protection, whether the agreement is oral or in writing. The Court stated, "where, as here, a seller agrees— orally or in writing—to a payment period exceeding thirty days, it forfeits trust protection." *Id.* at 47. In holding that the trust provision was not intended to protect produce sellers who did not insist upon prompt payment within thirty days, the Second Circuit asserted, "[s]ellers who are willing and able to enter into such [credit] agreements—whether pre-transaction or post-default—neither need nor deserve the elevated priority they receive under PACA's trust provision." *Id.* at 45.

Relying on *American Banana,* Baiardi argues that by agreeing to terms outside the scope of the PACA, the sellers opted out of PACA and thus are no longer protected by its provisions. It concludes that, therefore, the Secretary is barred from enforcing the full and prompt payment provisions of the PACA and does not have jurisdiction to commence disciplinary action against Baiardi.

Baiardi's argument notwithstanding, *American Banana* is distinguishable from the instant appeal. In *American Banana,* the issue before the court was whether, by entering into post-default agreements with the produce dealer extending the time of payment more than thirty days after the transaction, the produce sellers forfeited their rights to PACA trust protection. In this appeal, it is the Secretary of Agriculture, not the producer, who initiated the complaint against the buyer. *See* 7 U.S.C. § 499f(c)(2). The issue before us is not whether the produce sellers are entitled to trust protection but whether the arrangements between the parties regarding payment affect the Secretary's power to enforce the statute. Although the court in

*American Banana* held that the sellers lost PACA trust protection by entering into post-default agreements with the buyers, it did not purport to hold that such agreements deprive the Secretary of his statutory right to bring a complaint against a delinquent buyer. Such a holding would be contrary to the plain language of the statute and the regulations. They make clear that "[p]arties who elect to use different times of payment than [that] set forth in [7 C.F.R. § 46.2aa(5)— ten days] must reduce their agreement to writing before entering into the transaction. . . ." 7 C.F.R. § 46.2aa(11), and upon determination that the buyer has "violated any of the provisions of [section 2 of the PACA, including 2(4)] . . . the Secretary may publish the facts and circumstances of such violation and/or, by order, suspend the license of such offender for a period not to exceed ninety days, except that, if the violation is flagrant or repeated, the Secretary may, by order, revoke, the license of the offender." 7 U.S.C. 499h(a).

Thus, although parties may agree to payment periods beyond thirty days, the consequence, as the Second Circuit held in *American Banana,* is loss of PACA trust protection. Such post-default agreements do not operate to divest the Secretary of his right to "publish the facts and circumstances" of the buyer's violations. As the ALJ's decision in this case notes, " 'it has been repeatedly held that a seller's agreement to accept partial payment because of the buyer's insolvency does not constitute a full payment or negate a violation of the PACA.' " App. at 26 (quoting *In re Full Fail Produce, Inc.,* 52 Agric. Dec. 608, 619 (1993)).

Moreover, at least two courts of appeals have explicitly held that even if creditors agree to accept partial payment as a settlement, the merchant still has not "paid fully" under the Act. *Finer Foods Sales*

*Co., Inc. v. Block,* 708 F.2d 774, 782 (D.C.Cir.1983) ("Such a belated payment of a small portion [seven percent] of a licensee's obligation does not constitute the making of the 'full payment promptly' that section 2(4) requires."); *Marvin Tragash Co., Inc. v. United States Dep't of Agriculture,* 524 F.2d 1255, 1258 (5th Cir.1975) ("This partial payment [fifteen percent] under the plan entered into some months after the purchases can not be characterized as either full or prompt payment as required by the Act. . . ."). In both cases, the licensees were found guilty of "flagrant and repeated" violations of the Act and were prohibited from employment in the industry for one year.

Baiardi's interpretation of the statute would eliminate the ability of the Secretary to enforce proper buying and selling practices. The JO, in affirming the ALJ's decision, articulated the illogic of Baiardi's argument as follows:

> Respondent's contention that a produce seller's choice to accept half payment, when the other choice is to accept no payment at all, renders the situation not governable by the PACA and the debtor not subject to disciplinary action, is not consistent with the PACA, the Regulations, or case law. Indeed, the type of situation faced by Respondent's produce sellers—accepting half payment or nothing—is just the type of situation the PACA was designed to prevent.

App. at 26–27.

It is also important to note that not all of Baiardi's producer sellers agreed to partial payment and actually received the money owed. "A substantial amount of the $830,728.39 in non-payments alleged in the Complaint remains unpaid." App. at 27–28. Baiardi contends that only $30,000 remains due but, as the ALJ noted, "Even if all payments were made under the workout agreements, and even with the two court 'dispositions,' over $570,000 of the $830,000 in non-payments alleged in the complaint remains unpaid." App. at 10. Assuming that the major portion of the non-payments referred to by the ALJ have been paid, it is undisputed that none of the sixty-seven produce sellers were fully or promptly paid according to the provisions of the PACA. We agree with the analysis of the JO that the parties have not limited the Secretary's authority to enforce the PACA.

### III.

Based on the foregoing facts and law related to this case, we will deny the petition for review.